411 So.2d 81 (1982)
RAPIDES CONSTRUCTION, INC., Plaintiff-Appellee,
v.
Pierson A. GASPARD, Defendant-Appellant.
No. 8587.
Court of Appeal of Louisiana, Third Circuit.
February 3, 1982.
Charles F. Wagner, Pineville, for defendant-appellant.
Gold, Little, Simon, Weems & Bruser, Larry Feldman, Jr., Alexandria, for plaintiff-appellee.
Before DOMENGEAUX, DOUCET and LABORDE, JJ.
LABORDE, Judge.
This is a suit to recover the balance due in a building contract. Plaintiff-Contractor, Rapides Construction, Inc., sued defendant, Pierson A. Gaspard, seeking to recover the balance due upon a contract's substantial completion and to recover attorney's fees as provided for in the contract. After hearing extensive testimony presented by both plaintiff and defendant, the trial court rendered judgment in favor of plaintiff in the amount of $9,166.05, representing the balance owed less credits for necessary repairs undertaken by defendant. Legal interest was allowed from April 10, 1980. Plaintiff was also awarded $2,500.00 in attorney's fees and its lien was recognized. In defendant's favor, judgment was rendered in the amount of $1,000.00 for his loss of income, with legal interest from date of judicial demand. From the judgment, defendant appeals and plaintiff answers the appeal.
The issues concern the factual findings regarding the construction project's substantial completion; the amounts allowed as credits of the balance due for costs of necessary repairs; the loss of income award; and the attorney's fee award.
*82 The trial judge rendered comprehensive written reasons detailing his findings, conclusions, and awards. Close scrutiny of the extensive trial record reveals not only that the trial judge's conclusions are free of manifest error and that his awards are within the range of his wide discretion, but also that they are fully supported by the evidence adduced. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); LSA-C.C. art. 1934(3). Hence, we take the liberty of adopting as our own the well-reasoned and considered opinion of the trial court which reads in its entirety as follows:
"This is a suit by plaintiff to recover the balance due upon substantial completion of a building contract.
On April 27, 1979, plaintiff, Rapides Construction, Inc. entered into a building contract, (P-1), with defendant, Pierson Gaspard, to construct a pre-fabricated, metal frame building for the agreed upon consideration of $25,699.00.
Upon 90 per cent completion of each of four phases of construction, the contract provided for step-payments, consisting of 90 per cent of the total contract price of each phase. The remaining 10 per cent of the contract price was to be withheld as a retainage, payable upon final completion and approval of the construction project. All work to be completed under the contract by plaintiff was bonded by American Fidelity Fire Insurance Company as of July 20, 1979, (P-2).
By August 28, 1979, the first phase of construction had been 90 per cent completed, with defendant making his first step-payment on August 31, 1979.
On September 27, 1979, plaintiff requested payment for the second and third phases of the construction project. However, defendant refused payment by letter, dated October 4, 1979, (D-1), indicating that the work had not been performed in a workmanlike manner, nor in the manner agreed upon in their contract.
On October 12, 1979, a certified letter of demand was mailed to defendant by plaintiff's attorney, (P-3).
On October 23, 1979, plaintiff requested Philip Beard, a consulting engineer from Alexandria, Louisiana, to inspect the project, formulate a determination as to its percentage of completion and verify a punch list of items needing correction, submitted by defendant in his above-mentioned letter.
The inspection was carried out and a report was formulated on October 25, 1979, (P-4). According to Beard, the first three phases of the construction project were all at least 90 per cent complete. Included in this report was a list of items enumerated by defendant and additional items noted by Beard as needing completion.
On December 20, 1979, plaintiff filed an affidavit of lien, (P-7), on defendant's property, a copy of which was sent to defendant by certified mail, (P-5 and P-6), on December 21, 1979.
Subsequently, suit was filed by plaintiff against defendant on December 20, 1979, seeking payment for the last three phases of construction, plus attorney's fees and cost. On January 10, 1980, defendant answered and filed a reconventional demand against plaintiff, ordering the latter to complete the unfinished construction, correct all defects as outlined in his pleadings and pay damages resulting from the breach.
Subsequently, the parties, through the efforts of their attorney and Phillip Beard, attempted to negotiate their differences. As a result of the negotiations, a written agreement, modifying the original contract, was formulated on February 7, 1980. This agreement was further modified on February 26, 1980, (P-9), and signed by the parties.
The modified agreement contained eighteen proposals outlining work to be completed by plaintiff. The proposals were divided into four phases, each requiring payment by defendant upon plaintiff's completion. The total new consideration was $17,620.00.
The agreement reads as follows:
`Contractor shall notify Arbitrator of stage completion and forward to Arbitrator *83 written request for payment. Arbitrator will make inspection to verify compliance as required by this document and forward request for payment to Owner. Owner shall make progress payments within 10 days after receipt of Authorization by Arbitrator.
21. Time of Completion: Contract shall accomplish Proposals # 1 through # 18 not later than April 7, 1980.' (P-9, page 6) All other agreements between the parties including the original contract of April 27, 1979, were made a part of this modified agreement by reference and attached thereto.
Upon signing the above agreement, work was recommenced. On March 13, 1980, an invoice (P-10), was sent defendant in care of Beard, authorizing payment for substantial completion of the first phase of construction under the modified agreement. Defendant made this payment of $5,429.63.
On April 1, 1980, Beard sent a letter to plaintiff constituting the third and, what he considered to be, the final attempt to have certain listed items corrected, (D3). The letter went on to read as follows:
`... You have until 5:00 p. m., April 7, 1980 to perform substantial completion. No further payments will be forthcoming until you satisfy all parties concerned with substantial effort.'
On April 10, 1980, three days beyond the stipulated date for completion of the construction project, Beard mailed a letter to defendant, (P-11), authorizing payment for substantial completion of further work done on the construction project. Accompanying this letter was a certificate of substantial completion as of April 9, 1980, (P-12), signed by Beard. Authorized payment was in the amount of $9,330.07, with 10 per cent of the contract price to be held by defendant as retainage for work yet to be completed. Defendant refused to make payment.
On August 27, 1980, plaintiff filed a supplemental and amending petition, seeking the remainder of the contract price, $12,224.97, plus attorney's fees of $5,000.00. Defendant then answered and reconvened for $6,617.80, representing sums he expended to complete the construction. After further negotiations and a pre-trial conference, the matter went to trial February 12, 1981.
This Court now addresses the issues presented at trial.

SUBSTANTIAL COMPLETION OF THE MODIFIED AGREEMENT OF FEBRUARY, 1980
According to Neel v. O'Quinn, 313 So.2d 286 (La.App. 3rd Cir., 1975), the basic law in regard to a contractor's liability for failure to properly perform a construction contract is found in LSA-C.C. Article 2769, as follows:
`Art. 2769. Contractor's liability for noncompliance with contract. If an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he should be liable in damages for the losses that may ensue from the non-compliance with his contract.'
This code article has consistently been construed by the jurisprudence to mean that where a contractor has `substantially performed' a building contract, even though there exists certain defects, he has the right to recover the contract price, reduced by the amount necessary to perfect or complete the work. Martin v. AAA Brick Co., Inc., 386 So.2d 987 (La.App. 3rd Cir., 1980); Airco Refrigeration Service, Inc. v. Fink, [242 La. 73] 134 So.2d 880 (La.1961).
Thus, the essential question for determination in a building contract suit is whether the contract has been substantially performed.
The consulting engineer testified, and this Court finds, there was substantial completion of the contract on April 9, 1980.

AMOUNT DUE PLAINTIFF UPON SUBSTANTIAL COMPLETION
As stated above, plaintiff may recover the amount of the contract price, less the amount necessarily expended by defendant to perfect or complete the work. Additionally, *84 the contractor is liable in damages for the losses that may ensue from his noncompliance with the contract.
Plaintiff claims the remainder of the contract price amounts to $12,224.97, (P-14). Defendant claims the following as amounts necessarily expended to complete the project.

 Calk Service Company ........... $ 640.15
 St. Romain Pump Service ........ 1,254.75
 Earl J. Lachney ................ 58.00
 K&B Steel Builders ............. 4,604.12
 American Key & Lock ............ 29.93
 St. Romain Pump Service ........ 30.85
 __________
 Total ...... $ 6,617.80

According to Beard's testimony, plaintiff and defendant had agreed that the amount due Calk Service Company for its services was to be equally divided between them. This Court therefore finds that plaintiff may recover $320.08 for those services.
According to the testimony of Jerry Dufour, operation manager for St. Romain Pump Service, defendant had expended $1,254.75 for their services, which involved the installation and initial placing into operation of the air compressor and twin-post lift equipment. Dufour further testified that seventy per cent of the services constituted the installation of the equipment, while thirty per cent of the services constituted its initial placing into operation. Mr. Beard testified that under the parties' agreement, plaintiff was to be responsible for the equipment's installation only. This Court finds that defendant may only recover seventy per cent of the total amount expended, $878.33.
Defendant also seeks to recover $48.00 [sic] paid by him to Earl Lachney for his services, which involved the sanding and repainting of the front-end machine. Defendant testified that the machine needed repainting as a result of being left outside of the building for three weeks. Defendant further testified that he requested plaintiff to move the machine inside the building on three different occasions. This Court finds these services were required as a result of plaintiff's breach and, therefore, defendant is allowed to recover $58.00.
According to defendant's testimony, $4,604.12 was expended to K&B Steel Builders, a general contracting company owned and operated by Kenneth Long. Mr. Long testified that he first inspected the project in question in April, 1980. Aside from repairing the building's leaking roof, Long sublet most of the work and paid the subcontractors as follows.

Belwise ................ $ 982.40
Cenla Doors ............. 335.00
D. K. Murphy Electric .... 50.00

Testimony adduced at trial indicated that the amounts expended by Long for the services of Belwise and D. K. Murphy Electric are recoverable by defendant under the parties' agreement. However, the $335.00 amount paid to Cenla Doors includes $200.00 for the installation of chain hoists, which Beard testified were optional items not previously agreed upon by the parties. Therefore, only $135.00 would be recoverable by defendant for the services of Cenla Doors.
Long testified that he repaired the roof himself, spending approximately twenty hours of his time in doing so. He further testified that he charged approximately $20.00 per hour for his time. Therefore, defendant should be allowed to recover the sum of $400.00, which this Court finds is adequate compensation to Long for his services.
Long further testified that he charged ten per cent as overhead and five to six per cent as profit on all work he sublets or carries out himself. This Court finds that fifteen per cent of the amounts paid to the subcontractors and Long is justified as overhead and profit.
Defendant testified that he expended $29.93 for the services of American Key and Lock, which involved changing the locks to the building. This Court denies this expenditure as a recoverable amount, as the changing of these locks did not result from any defect, or constitute any corrective work.
Finally, defendant seeks to recover an additional amount paid to St. Romain Pump Service for the repair of air leaks. This *85 work was not in any way related to the work carried out by St. Romain under the parties' agreement. Therefore, this Court denies recovery of this expenditure.
The following is a summary of the amounts this Court finds to be deductible from the amount due on the contract price:

a) Calk Service Company ........... $ 320.08
b) St. Romain Pump Service ........ 878.33
c) Earl Lachney .................... 58.00

d) K&B Steel Builders:

1) Belwise ..................... 982.40
2) Cenla Doors ................. 135.00
3) D. K. Murphy Electric ....... 50.00
4) Kenneth Long ................ 400.00
 _________
5) Sub-Total (items 1 through 4) $1,567.40
6) 15% Overhead and Profit ..... 235.11
 _________
Total (items 5 and 6) 1,802.51
GRAND TOTAL .................... $3,058.92
 _________

The amount due is therefore $9,166.05

LOSS OF INCOME
As previously mentioned, even though plaintiff is entitled to sue for the remainder of the contract price, they are nevertheless liable in damages for the losses attributable to their noncompliance with the contract. La.C.C.Art. 2769, supra. Their noncompliance of this contract was the failure to execute the contract in a workmanlike manner and at the time agreed upon; April 17, 1980.
Plaintiff argues that defendant is not entitled to any damages for loss of income since damages are allowable only from the placing in default of the breaching party. Moreover, plaintiff contends that defendant is estopped from putting them in default as a result of his noncompliance with the step-payments outlined in the modified agreement of February 26, 1980.
The First Circuit was presented with a similar situation wherein each party to a building contract had breached their obligations. The appellate court held that damages would be allowed even though there was no placing in default of the contractor by the defendant, and even though the defendant had breached the contract as well. The Court found those code articles governing the putting in default, La.C.C.Arts. 1912 and 1913, to be inapplicable in building contract cases, since the controlling code article, La.C.Art. 2769, did not require a putting in default. Barber Brothers Contracting Company, Inc. v. Chet Homes, Inc., 393 So.2d 352 (La.App. 1st Cir., 1980).
According to defendant's testimony, his business was finally opened in June of 1980, approximately two months beyond the agreed-upon completion date of April 7, 1980. This Court finds that although the project was substantially completed on April 9, 1980, the defendant was nevertheless forced to delay his business endeavors until such time as it took for a new contractor to complete the project and cure the unworkmanlike defects of plaintiff. This Court finds that an award of $1,000.00 constituting loss of income from April 7, 1980, to June, 1980, is appropriate. This takes into consideration the agreed upon thirty-day period in which plaintiff was to finish the project after substantial completion.

ATTORNEY'S FEES
Plaintiff seeks an attorney's fee of $5,000.00 based upon language outlined in the parties' original contract, which later became incorporated in the modified agreement of February 26, 1980. The pertinent language of the contract is as follows:
`It is further agreed that purchaser will pay all costs of collecting, or securing or attempting to collect or secure any indebtedness which may be due hereunder, including a reasonable attorney's fee, whether the same be collected or secured by suit or otherwise.'
Attorney's fees are not allowed unless particularly authorized by statute or by contract between the parties. Simmons v. Hernandez, 287 So.2d 637 (La.App. 3rd Cir., 1973).
This Court finds that reasonable attorney's fees have been authorized by contract between the parties as a result of the incorporation of the original contract of April 27, 1979, within the modified agreement of February 26, 1980.
*86 Defendant argues that plaintiff cannot recover attorney's fees because it breached the contract. In Snow-White Roofs, Inc. v. Boucher, 182 So.2d 846 (La.App. 4th Cir., 1966), the Fourth Circuit was faced with the similar issue of whether plaintiff contractors could recover attorney's fees, as provided for under the contract, even though he failed to perform part of the work as agreed. The appellate court held that the contractor had substantially completed the project and then addressed the issue as follows:
`One of the provisions of the contract in this case is that, in the event it became necessary for plaintiff to place the contract in the hands of an attorney for collection or suit, the defendants agreed to pay a reasonable attorney's fee and any court costs incurred thereby. As this action is on the contract and as plaintiff was forced to place the matter in the hands of its attorney, institute suit and prosecuted the suit to judgment, it is quite clear that the defendants are liable for the attorney's fee and the court costs.' Snow-White Roofs, Inc. v. Boucher, supra at page 849.
This court is of the opinion that where a contract is breached by both parties, such penalty-type provisions should not be given effect. However, this Court awards attorney's fees due to the contract language and the precedent set forth in the above appellate decision.
This Court fixes attorney's fees under the facts and circumstances of this case in the amount of $2,500.00.
For the above and foregoing reasons; judgment is rendered in favor of plaintiff in the amount of $9,166.05 with legal interest from April 10, 1980, together with $2,500.00 in attorney's fees, and for the lien recognized as demanded. (P-6). Judgment is further rendered in favor of defendant in the amount of $1,000.00 for his loss of income with legal interest from date of judicial demand.
Expert witness fee of Richard Beard is fixed in the amount of $150.00 and taxed as cost. The fee for recording the lien was $15.25 and is taxed as cost. Defendant is taxed for all costs in accordance with the contractual agreement."
As noted above, we fail to discern any clear error or abuse of its "much discretion" on the part of the trial court.
Plaintiff answered the appeal praying for an increase in damages and attorney's fees. Finding no justification for altering the awards of the trial court, plaintiff's demands are denied.
For the above reasons, the decision of the trial court is affirmed. All costs of this appeal are assessed to the defendant, Pierson A. Gaspard.
AFFIRMED.