563 So.2d 1327 (1990)
Gary W. SALARD, et ux., Plaintiffs-Appellees,
v.
JIM WALTER HOMES, INC., Defendant-Appellant.
No. 89-175.
Court of Appeal of Louisiana, Third Circuit.
June 27, 1990.
Rehearing Denied August 8, 1990.
*1328 Van H. Kyzar, Natchitoches, for plaintiffs-appellees.
Jones, Tete, Nolen, Hanchey, Swift & Spears, Charles N. Harper, Lake Charles, for defendant-appellant.
Before DOUCET, LABORDE and KING, JJ.
LABORDE, Judge.
This is a suit by the plaintiffs, Gary W. Salard and Barbara Ann Salard, to rescind *1329 a contract for the construction of a residence. The plaintiffs also seek out-of-pocket expenses incurred as a result of the construction of the residence and tort damages for the intentional infliction of emotional distress through the malicious acts of the defendant's employees. The defendant, Jim Walter Homes, Inc., answered the suit and, in addition, filed a reconventional demand seeking to recover $37,872.96, the balance allegedly due on a promissory note executed by the plaintiffs. The trial judge, finding in favor of the plaintiffs, rescinded and set aside the building contract entered into between the parties and ordered the defendant to remove the structure from the plaintiff's property. The trial judge further awarded the plaintiffs $5,000.00 for out-of-pocket expenses and $15,000.00 for the tortious acts of the defendant's employees. The reconventional demand filed by the defendant was dismissed. From this judgment, the defendant now appeals. We reverse in part, affirm in part and render judgment.

FACTS
On October 6, 1986, Mr. and Mrs. Gary W. Salard entered into an agreement with Jim Walter Homes to construct a residence on property they owned near Black Lake in Natchitoches Parish, Louisiana. The Salards, who were first-time home buyers, selected a standard design home with an accompanying set of options. The agreed upon price of the home was $32,900.00, which was represented by a promissory note executed by the Salards on the same date that the building contract was entered into. The promissory note bears interest at the rate of 10% per annum and states that it is payable in 240 equal monthly installments of $317.40, with the total principal and interest payments amounting to $76,176.00. In addition, the note is secured by a mortgage affecting the Salards' property.
Construction began on the Salards' home shortly after the contract was signed. On December 16, 1986, Mrs. Salard signed a completion slip, with the understanding that there remained a certain degree of work to be done on the house. The Salards moved into their new home on December 23, 1986.
The evidence establishes that the plaintiffs experienced problems with their house from the outset. Mr. Salard testified that during the construction process he noticed that the builders were performing very shoddy labor. Shortly after the plaintiffs moved into their residence, they called the defendants' office to inform them of the problems they were having. A representative from defendant's office, Jerry Bergeron, was sent to examine the plaintiffs' home on January 22, 1987. After inspecting the house, Mr. Bergeron compiled a "punch list" of 24 defects. On February 6, 1987, Mr. Bergeron contacted the plaintiffs about performing the needed repairs. Mr. Salard informed Mr. Bergeron that they had employed the services of a lawyer and that any correspondence concerning the house would have to be directed to him. On April 4, 1987, Kenneth Bufford, a customer service specialist for the defendant, inspected the Salards' home. In a letter addressed to the Salards' attorney, Mr. Bufford represented that the defendant was willing to correct 30 defects which existed in the home. Mr. Bufford testified in his deposition that he never received any response to this letter.
The Salards filed a lawsuit on July 2, 1987, to rescind the sale of the house and for other damages. In their petition, the plaintiffs list 33 defects.[1] Despite the existence of these defects, the plaintiffs continued *1330 to inhabit the residence through the date of trial. It must also be noted that the plaintiffs have made no payments on the promissory note.

SUBSTANTIAL PERFORMANCE
On appeal, the defendant first contends that the trial court erred in rescinding the sale, as the evidence establishes that the contract was substantially performed. We agree.
It is implied in every building contract that the work of the builder is to be performed in a good workmanlike manner, free from defects in either materials or workmanship. Fortier v. Sessum, 441 So.2d 1238 (La.App. 5th Cir.1983); Neel v. O'Quinn, 313 So.2d 286 (La.App. 3d Cir.), writ denied, 319 So.2d 440 (La.1975). This rule of law is codified in article 2769 of the Louisiana Civil Code, which states:
"If an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he should be liable in damages for the losses that may ensue from his non-compliance with his contract."
Our jurisprudence has construed this codal provision to mean that when a contractor has substantially performed a building contract, despite the fact that certain defects are present, he is entitled to recover the contract price, and the owner is limited to having the price reduced by the amount necessary to perfect or complete the work. If the building contract has not been substantially performed, the contractor is limited to quantum meruit. However, if the defects cannot be corrected except by removing and replacing the construction, the owner may require the contractor to remove the object from his land and restore the premises to their prior condition. The owner is also entitled to damages in this last instance. Trahan v. Broussard, 399 So.2d 782 (La.App. 3d Cir.1981); Martin v. AAA Brick Co., Inc., 386 So.2d 987 (La. App. 3d Cir.1980); Neel, supra. Substantial performance exists when the thing constructed may be used for the purposes intended even though certain defects or omissions are present. It is a factual determination to be made on the basis of the extent of the defect or non-performance, the degree to which the purpose of the contract is defeated, the ease of correction and the use or benefit to the owner of the work performed. Riche v. Juban Lumber Co., Inc., 421 So.2d 318 (La.App. 1st Cir. 1982); Neel, supra. Finally, as was articulated by this court in the Neel case, "substantial performance by a contractor is readily found, despite the existence of a large number of defects in both material and workmanship, unless the structure is *1331 totally unfit for the purpose for which it was originally intended." Neel at 291. Accord, Campagna v. Smallwood, 428 So.2d 1343 (La.App. 4th Cir.1983). In Neel and Campagna, substantial performance was found, notwithstanding substantial defects existing in the buildings involved in those cases, where the evidence established that the owners of those buildings had occupied them through the date of trial.
Although we find that the house contained the defects alleged by the plaintiff and that the quality of workmanship was poor, we determine that the trial court erred in not holding that the contract had been substantially performed. The record clearly does not support a finding that the structure was totally unfit for its original intended purpose. The purpose of the structure was to function as a dwelling for the plaintiffs and their two daughters. The evidence indicates that the residence has served this purpose, as the plaintiffs continued to live in the house through the date of trial. Substantial performance was also indicated by the testimony of the plaintiffs' expert, Mark Waskom. Mr. Waskom stated at trial that the house contained several defects, some of which could be described as being major, but that it was able to be repaired. When asked what it would cost to correct the defects and the time it would take to do so, Mr. Waskom answered that it would cost $15,000.00 to make the repairs and the job would last between four to six weeks. Accordingly, we find that the contract was substantially performed by the defendant and it is entitled to recover the purchase price of the home.
The defendant's recovery in this case must be offset by the amount that would be required to perfect or complete the work. We find that the plaintiffs' expert's estimate of $15,000.00 to correct the defects in the house is substantiated by the record. Therefore, the defendant's recovery on its reconventional demand is reduced by $15,000.00. We further find that the $5,000.00 awarded by the trial judge to plaintiffs for out-of-pocket expenses should be applied against the defendant's recovery. We thus affirm the $5,000.00 award for out-of-pocket expenses and apply this amount as a set off to the defendant's reconventional demand.

DELICTUAL RESPONSIBILITY
The trial court awarded the plaintiffs $15,000.00 in damages for the intentional tortious acts of the defendant's employees. The trial court found the following acts of the workers to constitute tortious conduct: (1) the use of vile and profane language to deliberately upset Mrs. Salard and her children; (2) the use of threats concerning the destruction of the residence to further upset the Salards; (3) the placing of tacks in the Salards' driveway which caused two flat tires; and (4) the depositing of nails in fire ant nests around the yard which complicated the Salards' cleanup process.
The defendant does not dispute the trial court's finding of tortious conduct on the part of the workers; however, it does contend that it should not be held vicariously liable for their behavior because the workers were independent contractors. We agree.
LSA-C.C. art. 2320 establishes that masters and employers are answerable for the damage occasioned by their servants, in the exercise of functions in which they are employed. Smith v. Zellerbach, 486 So.2d 798 (La.App. 1st Cir.), writ denied, 489 So.2d 246 (La.1986); Hemphill v. State Farm Insurance Co., 472 So.2d 320 (La. App. 3d Cir.1985). It is well settled that employers are only vicariously liable for the torts of their servants and not for the torts committed by independent contractors. Hemphill, supra; Arledge v. Royal Globe Insurance Co., 401 So.2d 615 (La. App. 3d Cir.1981). The Louisiana Supreme Court in Hickman v. Southern Pacific Transport Co., 262 La. 102, 262 So.2d 385 (1972) determined that independent contractor status exists when:

*1332 (1) There is a valid contract between the parties;
(2) The work being done is of an independent nature such that the contractor may employ non-exclusive means in accomplishing it;
(3) The contract calls for specific piecework as a unit to be done according to the independent contractor's own methods without being subject to the control and direction of the principal, except as to the result of the services to be rendered;
(4) There is a specific price for the overall undertaking; and
(5) Specific time or duration is agreed upon and not subject to termination at the will of either side without liability for breach.
See also Amyx v. Henry & Hall, 227 La. 364, 79 So.2d 483 (1955). The supervision and control which is actually exercised is not as significant as the right to exercise such supervision and control in the determination of whether a principal/independent contractor relationship exists in a given case. Hickman, supra; Odom v. Eaves, 311 So.2d 575 (La.App. 3d Cir.1975).
In the case sub judice, the workers who constructed the shell of the house were responsible for the acts of harassment which the plaintiffs were subject to. The contract between these individuals and Jim Walter Homes provides that, "[s]ubcontractor agrees to provide all labor, services, tools, and equipment necessary to perform and accomplish the items of work set out in Paragraph 13...." The contract also states in Paragraph 4 that:
"Subcontractor represents that he is self-employed; that he is an independent party working on his own behalf, at his own bequest and for his own benefit and under his own control and responsibility. Subcontractor may employ as many employees as desired by the Subcontractor, and Subcontractor will exercise full and absolute control over such employees...."
Additionally, the contract provides a specific price for the work to be performed. Finally, and most importantly, there is no reservation of control over the means used to complete the job anywhere in the contract.
We find that the trial court clearly erred when it held the defendant liable for the actions of these subcontractors. The evidence establishes that, under the conditions set out in Hickman, these individuals qualified as independent contractors. We realize that one of defendant's employees, Joe Rodabough, did visit the worksite on a couple of occasions and did consult with the subcontractors about bringing their work in compliance with the contract specifications; however, there is no evidence that he was there on a routine basis, nor is there any evidence to suggest that he exercised direct supervision over the step-by-step process of accomplishing the work. Quite simply, we determine that the individuals were independent contractors, and, as such, the defendant can not be held responsible for their actions.
For the foregoing and above assigned reasons, the judgment rescinding the building contract and awarding the plaintiffs damages against the defendant for the intentional infliction of emotional distress is reversed. The defendant is entitled to recover on its reconventional demand the sum of $32,900.00 (the purchase price of the house) less $15,000.00 for repairs to the house and $5,000.00 for the plaintiffs' out-of-pocket expenses. The defendant is also entitled to recover 10% of the aforementioned amount in attorney's fees pursuant to the terms of the promissory note. See Rapides Construction, Inc. v. Gaspard, 411 So.2d 81 (La.App. 3d Cir.1982).
Judgment is rendered in favor of defendant, Jim Walter Homes, Inc. and against plaintiffs, Gary W. Salard and Barbara Ann Salard, for the sum of $12,900.00, together with interest of 10% per annum from the date of the note, until paid, and for $1,290.00 as attorney's fees, and recognizing and maintaining the mortgage and *1333 privilege in favor of the defendant affecting the plaintiffs' residence for the amount of the money judgment rendered herein. All costs of the trial and appellate courts are taxed equally to plaintiffs-appellees and defendant-appellant.
REVERSED IN PART; AFFIRMED IN PART; AND RENDERED.
NOTES
[1] The defects listed in the petition are as follows:

(1) Foundation and structural defects consisting in part of pads and footings being placed on top of ground rather than below ground surface, support piers leaning and pads or footings being cinder instead of concrete.
(2) Wall plugs are cut too large for covers.
(3) Nail pops in sheetrock.
(4) Cabinet top does not fit wall.
(5) Cabinet top loose.
(6) Three (3) inside door jambs coming apart.
(7) Can see daylight at door jambs.
(8) Rough sheetrock.
(9) Top cabinets improperly installed and cracked or chipped.
(10) Electrical plugs move when anything is plugged in.
(11) Sheetrock seam showing at one (1) window.
(12) Crack in sheetrock above 2830 window in dining room and above mull window in living room.
(13) Metal corner bead can be seen around windows.
(14) Tub kit coming loose.
(15) Sheetrock cracked at corner bead in bathroom.
(16) Window sill in front corner bedroom out of level.
(17) Busted door jamb in master bath.
(18) Tape showing in master bath.
(19) Electrical plug behind couch in den does not work.
(20) Bad paint job.
(21) Shutters installed by hammering screws into shutters, one shutter is missing, and some screws missing in shutters.
(22) Some bird blocks lean in and some out.
(23) Rafter tails cut with chainsaw getting saw into deck leaving saw marks.
(24) Front porch leans towards house.
(25) Plywood shim at barge rafter.
(26) One nail on roof sticks up and holds shingle up and on 5 to 6 shingles, the grave is coming off.
(27) Back steps fell off and front steps loose.
(28) Siding behind steps not painted.
(29) Back light fixture broken.
(30) Rubber sweep on both front and back door installed upside down.
(31) Weather stripping around exterior doors is coming off.
(32) Ceiling sheetrock is sagging and bowing.
(33) Plumbing pipes under house have fallen.