811 So.2d 130 (2002)
PETERSON CONTRACTORS, INC., Plaintiff-Appellee,
v.
HERD PRODUCING COMPANY, INC., Defendant-Appellant.
No. 35,567-CA.
Court of Appeal of Louisiana, Second Circuit.
February 27, 2002.
*131 Hargrove, Pesnell & Wyatt by Scott C. Sinclair, Shreveport, for Defendant-Appellant.
Sharp, Henry, Cerniglia, Colvin, Weaver & Hymel by James H. Colvin, Homer, Charles E. Weaver, Homer, for Plaintiff-Appellee.
Before NORRIS, WILLIAMS and DREW, JJ.
NORRIS, Chief Judge.
Defendant, Herd Producing Company, Inc., ("Herd") appeals the trial court judgment awarding plaintiff, Peterson Contractors, Inc., ("Peterson") $24,500 plus judicial interest and costs for substantially completing a road construction contract in accordance with Herd's written specifications. *132 This appeal urges the lower court erred in granting any recovery on the contract, and, alternatively, that the award was too high. For the reasons expressed, we affirm.

Facts
Peterson constructs roads and work sites for drilling operators. Herd is a petroleum exploration and production company. Around November 1, 1998, Herd contacted Peterson and requested a bid on a contract to construct a road and work pad around its Manley No. 1 well site north of Homer, Louisiana. Herd specified that the contractor use soil cement as a stabilizing agent before overlaying with rock or gravel since the road would have to support the heavy loads of rig drilling equipment and trucks.
After receiving several bids, including one from Peterson for $47,900, Herd decided that this construction technique would be too expensive, so Herd contacted some of the construction companies again and asked them to resubmit bids for the project without the use of soil cement and pea gravel. This time Herd specified that the construction companies build the road with "native rock."
Peterson's new bid was for $27,000 while B & N, a competing contractor, bid $24,058 for the project. Herd awarded the contract to Peterson, though, because Peterson had a good track record with Herd over previous jobs.
It should be noted that one of the major disputes between these parties is over what was meant by the term "native rock" as specified by Herd. The written specifications simply said, "native rock on location, pad and roadway." (Ex. 4) At trial, Mr. Herd testified that he meant simply a mixture of rock and dirt which comes straight from the ground, unprocessed. According to Mr. Herd the term has no geographical significance. Mr. Peterson testified, and Wiggins corroborated, that he understood the term to mean a mixture of rock and dirt which comes straight from the ground, unprocessed, from Claiborne Parish.
Prior to beginning work, Peterson expressed concern to Herd about the suitability of native rock for a road construction project in that part of north Louisiana during the rainy season. Peterson testified that he expressed these concerns to the local project overseer, Jimmy Wiggins, and a Herd executive in Texas, Tony Fears. Peterson urged the use of soil cement and felt that there was a substantial risk that a road of native rock might fail under severe wet weather and the weight of heavy drilling equipment. Fears decided to go forward with the native rock that Peterson had selected.
Peterson commenced construction on November 7, 1998. By November 9, the total project was 65% complete, but rainy conditions set in and work was shut down for much of the balance of November. Around November 27, Peterson hauled and spread the native rock from Claiborne Parish on the road. After an all-night rain, logging trucks drove on a portion of the road that was formerly an old logging road and left it deeply rutted. Thereafter, Herd relieved Peterson from the job and hired B & N which then constructed the road. B & N was able to complete the road satisfactorily by using what it referred to at trial as "native gravel" from a pit in Eagle Mills, Arkansas.
It is not disputed that Peterson's native rock from Claiborne Parish failed to result in an acceptable road and work site. Because Herd refused to pay Peterson for the work it had performed, Peterson instituted this suit.
The trial court found that Peterson believed that the term native rock meant *133 rock that was unwashed and unprocessed from Claiborne Parish. Further it concluded that Peterson discussed his concerns about the material fully with a Herd employee and a Herd executive, and that the decision was made to go forward and try to construct the road with the native rock material Peterson had selected.
The trial court also found that Peterson had substantially completed the construction contract and was not responsible for defects caused by faulty or insufficient specifications pursuant to La. R.S. 9:2771. Accordingly, the trial court awarded Peterson the amount of its contract bid less an offset of $2,500, which is not contested on appeal. This appeal followed.

Discussion-Defect
In construction contracts, Louisiana law implies that the contractor will construct the work in a good and workmanlike manner, the work will be suitable for its intended purpose, and the work will be free of defects in workmanship or materials. Winford Co. v. Webster Gravel and Asphalt, Inc., 571 So.2d 802 (La.App. 2 Cir.1990). A contractor is not responsible, however, for defects caused by faulty or insufficient specifications furnished to the contractor. La. R.S. 9:2771; Tex-La Properties v. South State Ins. Co., 514 So.2d 707 (La.App. 2 Cir.1987). If the defect in the construction is caused by faulty or insufficient plans or specifications, the contractor is immune from liability upon constructing in compliance therewith, provided the specifications are not provided by him. Winford v. Webster, supra.
Herd focuses its argument on the rock material that Peterson used to construct the road and claims that it was not suitable for the job intended and was defective as a construction material. This rock came from a pit approximately three miles from the well site owned by a man named Causey (hence the name, "Causey material"). Herd claims Peterson alone chose to use this rock on the site in question, and that Herd did not specify exactly which kind of rock had to be used, simply "native rock." Herd claims it should not have to pay Peterson for a road Peterson built with defective materials.
Peterson claims that it used a material which conformed to Herd's contract specifications of "native rock," and that it used the best native rock available for purchase from Claiborne Parish. This testimony was corroborated by Herd's project overseer on site, Jimmy Wiggins, who testified that the Claiborne Parish rock met the definition of native rock as it was used in the contract.
Peterson also points out that prior to beginning work, it expressed concern to Herd about the suitability of native rock for this project in that part of north Louisiana during the rainy season. Peterson expressed these concerns to the local project overseer, Jimmy Wiggins, and a Herd executive in Texas, Tony Fears. Peterson urged the use of soil cement and felt that there was a substantial risk that a road of native rock might fail under severe wet weather and the weight of heavy drilling equipment; but Herd insisted on the use of native rock instead.
A court of appeal may not set aside a trial court's findings of fact in the absence of manifest error or unless it is clearly wrong. Stobart v. State, through Dept. of Transp. and Development, 617 So.2d 880 (La.1993). In applying this standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the fact-finder's conclusion was a reasonable one. Id. If the fact finder's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *134 Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.07/01/97), 696 So.2d 551. Reasonable evaluations of credibility and inferences of fact should not be disturbed upon review where conflict exists in the testimony. Rosell v. ESCO, 549 So.2d 840 (La.1989). Absent a finding of manifest error, the judgment should be upheld. Kelley v. Jack Jackson Const. Co., 32,663 (La.App. 2 Cir. 12/30/99), 748 So.2d 1270 (citations omitted).
The trial court found that the term "native rock" is not a technical term, nor a term of art, and that the material Peterson chose to complete the job conformed to Herd's specifications of "native rock" and to Herd's trial definition of "native rock." Furthermore, the trial court found that the material Peterson chose and used was the best native rock available for purchase from Claiborne Parish. We conclude that, based on the record, the trial court's finding of fact that the Causey material complied with Herd's requirement of a native rock is not manifestly erroneous.
The trial court further found that Peterson had warned Herd that the road might not be suitable for Herd's needs if native rock was used. Peterson strongly recommended the use of soil cement instead due to the probability of poor weather, but Herd insisted that Peterson use native rock, despite Peterson's warnings of possible road failure with that material.
We find that the trial court was not manifestly erroneous for holding that Peterson is not liable for any defect in the road due to the use of native rock from the Causey pit. Herd insisted that Peterson go ahead with the use of native rock over soil cement in the construction of the road, and cannot now refuse a road which conforms to Herd's own design specifications, which were at best insufficient and ambiguous. La. R.S. 9:2771.

Substantial Performance
Herd also claims that the trial court erred in ruling that Peterson had substantially performed the contract and that therefore Peterson was owed the entire contract price for the job. Herd contends that because the road failed, there can be no substantial performance.
In order to recover the contract price, a contractor must establish that he has substantially performed the construction contract. Design & Corrosion Eng'g v. Piggly Wiggly of Mansfield, Inc., 408 So.2d 292 (La.App. 2 Cir.1981). If defects are present in the substantial performance, the contractor is entitled to recover the contract price, less the damages attributable to his breach, such as the cost to complete the work. Airco Refrigeration Service, Inc., 242 La. 73, 134 So.2d 880 (1961) (citations omitted).
Substantial performance is a question of fact. Industrial Roofing and Sheet Metal Works v. J.C. Dellinger Memorial Trust, 32,048 (La.App. 2 Cir. 8/20/99), 751 So.2d 928, writ denied 99-2948 (La.12/17/99), 752 So.2d 166. In determining whether or not a performance was substantial, the court may consider the extent of the defect or nonperformance, and the use or benefit to the owner of the work performed. Acadiana Health Club, Inc. v. Hebert, 469 So.2d 1186, (La. App. 3 Cir.1985); Design & Corrosion Eng'g v. Piggly Wiggly of Mansfield, Inc., supra (citations omitted).
The instant case presents a unique circumstance, however, one in which the typical criteria for substantial performance are not helpful to the trier of fact. In the instant case, these factors have been affected by the defective design specifications provided by the owner, Herd, that *135 called for the use of native rock. The trial court was therefore entitled to rely on the only criterion unaffected by Herd's defective specifications to determine Peterson's substantial performance: the extent of Peterson's performance or nonperformance in accordance with those specifications.
Herd also argues that the trial court was in error to find that Peterson had substantially performed the construction contract, because it contends that the job site was less than 55% complete.
The trial court, however, relied on the testimony of Mr. Peterson, as corroborated by Herd's employee on the job site, Wiggins, that the contract work was 85% complete. The only remaining task for Peterson to complete at the site was to dump and spread the rock material over the work pad. Much of the preparatory work such as clearing and grading the area had been completed.
Because substantial performance is a question of fact, it is reviewable on appeal only for manifest error. We find no manifest error in the trial court conclusion that Peterson substantially performed the construction contract in accordance with Herd's specifications. As such, Peterson is entitled to a recovery of the contract price.
Herd argues that even if Peterson is found to have substantially performed the contract, the contract price should be substantially reduced to account for the unfinished nature of the project and to prevent a windfall to Peterson. Herd argues that the award to Peterson should at least be lowered to $14,400, the price for the work Peterson completed as quoted by Peterson's final bill presented to Herd after Herd discharged him.
While the $14,400 bill which Peterson submitted to Herd may reflect an accurate quantum meruit calculation of the work performed, the law of substantial performance is well settled. Because it substantially performed the contract, Peterson is entitled to recover the contract price less the damages attributable to Peterson's breach, such as the amount to complete the work. Airco Refrigeration Service, Inc. v. Fink, supra; Planiol Civil Law Treatise (Translation), Vol. 2, Part 2, Nos. 1897-1901. Furthermore, the owner must prove the existence of the defects caused by the contractor, and the cost of repair or completion. Airco Refrigeration Service, Inc. v. Fink, supra; Neel v. O'Quinn, 313 So.2d 286 (La.App. 3 Cir. 1975), writ denied 319 So.2d 440 (1975).
In this case, a reduction of the contract price is not warranted. Peterson was not the party that breached the contract. Peterson only stopped construction when Herd mandated it discontinue work on the site. Furthermore, the record does not contain any evidence of what it would have cost to have Peterson's interrupted performance completed.
Therefore, this court finds that the trial court was not plainly wrong to find that Peterson, who has substantially performed the contract in accord with the terms and specifications furnished by Herd, is entitled to recover the full contract price. The trial court reduced Peterson's recovery of the entire contract price by $2,500, but this is not an issue contested on appeal and is not presently before the court. Therefore, Peterson's recovery is $24,500.

Conclusion
For the foregoing reasons, we affirm the judgment of the trial court. Costs of appeal are assessed to appellant, Herd Producing Company, Inc.
AFFIRMED.