DO NOT PUBLISH

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

06-747

MAGNON ELECTRIC, INC

VERSUS

NATIONAL RENTAL COMPANY, LTD.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20015156
HONORABLE JULES D. EDWARDS, III, DISTRICT JUDGE

**********

J. DAVID PAINTER
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, J. David Painter, and James T. Genovese, Judges.

AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.

Charles M. Rush
P.O. Box 53713
Lafayette, LA 70505
Counsel for Plaintiff-Appellant:
    Magnon Electric, Inc.

Theodore G. Edwards, IV
Christopher J. Piasaki
P.O. Box 2908
Lafayette, LA 70502-2908
Counsel for Defendant-Appellee:
    National Rental Company, Ltd.

PAINTER, Judge.

The Plaintiff, Magnon Electric, Inc. (Magnon), appeals the judgment of the trial court in this suit to enforce its lien against the property of National Rental Company, Ltd. (National). Finding manifest error in the determination that the work was not substantially complete, we will review the matter *de novo*.

FACTS AND PROCEDURAL HISTORY

Magnon is a small, family-owned electrical contracting business. Jason Magnon is president and his brothers, Wendell and Brett, are also a part-owners and employees of the business. In March 1999, Magnon entered a contract with National to provide "electrical labor and materials as per plans" on a new building being built by National to house its business. The contract stated a price of $59,776.00. In May 1999, National moved into the new building. On June 3, 1999, Magnon issued an invoice for the job in the amount of $59,776.00. The previous day, Magnon had issued an invoice for $938.00 to add circuits for equipment which it alleges was not a part of the contract. Shortly after moving in, National began experiencing difficulties with the lighting and wiring. Attempts were made to correct the problems. During this time, National did not pay the invoices issued to it by Magnon in connection with the construction of the building. Magnon made formal demand for payment, which was not forthcoming. On July 2, 2001, Magnon filed a lien on the building and the underlying property. In October 2001, Magnon filed suit to seize the property affected by the lien. National filed an answer and reconventional demand alleging that it is owed a set off of $10,200.00 for four pressure washers it supplied to the owners of Magnon and a set off of $23,860.26 for a tractor which it rented to Magnon. National further alleged that the work described on the invoice for $938.00 was not performed

1

or was part of the original contract work and the remainder of the work was performed in an unworkmanlike manner and had not been repaired. National, in its reconventional demand, claimed to be entitled to damages incurred as a result of the liens filed against it.

After a trial on the merits, the district court found in favor of the Defendant on the main demand, stating that there was not enough evidence to show that the work had been substantially completed because of the failure to introduce the plans and specifications for the project. The court further found that Magnon had not shown its entitlement to the $938.00 claimed for extra work. In spite of finding that the main demand had not been proven, the court found that National was entitled to an offset of $4,912.53 for tractor rental and $10,200.00 for the pressure washers. It further found that the last row of fixtures installed in the showroom and the switches in the warehouse contained redhibitory defects and that National was entitled to recision of the sale of those fixtures. It found that National had failed to show that the remainder of the electrical work and/or fixtures and wiring were deficient. It further found that National failed to prove damages incurred because of the lien.

Magnon appeals asserting that the trial court erred in failing to find that the work was substantially complete, in rescinding the sale of certain fixtures, and in awarding a credit for the pressure washers and the tractor rentals.

DISCUSSION

*Standard of Review*

The trial court's findings of fact are not to be disturbed unless they are manifestly erroneous or clearly wrong, even if this court would have weighed the evidence differently or come to a different conclusion. However, where the trial court

2

erred either as a matter of law or was clearly wrong in its factual findings, the appellate court must conduct a *de novo* review of the entire record. *Love v. E.L. Habetz Builders,* 01-1625 (La.App. 3 Cir. 6/26/02), 821 So.2d 756.

*Substantial performance*

Under Louisiana law, every construction contract is implied to warrant that the work will be free from defective material or workmanship. *Salard v. Jim Walter Homes, Inc.*, 563 So.2d 1327 (La.App. 3 Cir. 1990); *Peterson Contractors, Inc. v. Herd Producing Co., Inc.*, 35,367 (La.App. 2 Cir. 2/27/02), 811 So.2d 130. If a contractor fails in this duty, he may be held liable in damages. La.Civ.Code art. 2769. If the contractor has substantially performed under the contract, he may recover the contract price even if certain defects are present. If, however, he has not substantially performed, he is limited to recovering on a quantum meruit basis. *Salard*, 563 So.2d 1327.

> Substantial performance exists when the thing constructed may be used for the purposes intended even though certain defects or omissions are present. It is a factual determination to be made on the basis of the extent of the defect or non-performance, the degree to which the purpose of the contract is defeated, the ease of correction and the use or benefit to the owner of the work performed. *Riche v. Juban Lumber Co., Inc.,* 421 So.2d 318 (La.App. 1st Cir.1982); *Neel* [*v. O'Quinn*, 313 So.2d 286 (La.App. 3 Cir.), *writ denied*, 319 So.2d 440 (La.1975)]. Finally, as was articulated by this court in the *Neel* case, "substantial performance by a contractor is readily found, despite the existence of a large number of defects in both material and workmanship, unless the structure is totally unfit for the purpose for which it was originally intended." *Neel* at 291.

*Id.* at 1330-31.

In this case, the evidence shows that National moved into the building and that it functioned as a place of business from that time through the time of trial. National used the lighting and electrical system in spite of the problems which existed. Further, the evidence of National's expert electrician, Jeff Davis, was that, although the

electrical system had defects, it could be repaired. There was uncontested testimony that the electrical system passed inspection by the Metro Code Authority. Nothing in the record suggests that the electrical system is "totally unfit for the purpose for which it was originally intended." *Id.* at 1331, quoting *Neel*, 313 So.2d at 291.

The trial court based its finding on the failure of the Plaintiff to introduce the plans and specifications used in designing and installing the electrical system. We can find no authority requiring proof of the plans and specifications in order to show substantial performance. Had the Plaintiff sought to relieve itself of liability by showing that the defects in construction resulted from insufficient plans or specifications, proof of the contents of the plans would have been necessary. La.R.S. 9:2771. However, Magnon made no such claim. Therefore, we find that the court erred in failing to find that Magnon substantially performed its obligations under its contract with National. Having so found, we will review the record *de novo* to determine the amount due to Magnon and whether National is entitled to a reduction in price and the offsets claimed.

*Reduction in Price*

Even where a contractor is found to have substantially completed the contract work, if the owner presents evidence of the cost of completion of the work or of the correction of defective work, the court may reduce the contract price by that amount. *See Mayeaux v. McInnis*, 00-1540 (La.App. 1 Cir.), 809 So.2d 310; and *Salard v. Jim Walter Homes, Inc.*,563 So.2d 1327 (La.App. 3 Cir. 1990)

In this case, there was evidence which established that problems existed in the electrical system and that those problems persisted up to the time of trial, in spite of repeated attempts to correct them. Chuck Beadle, owner of National, testified that the

4

lights in the showroom at the front of the facility would extinguish and reignite on their own, and continued to do in spite of Magnon's having changed the ballasts in the fixtures. His employee, Jason Babineaux, confirmed this. Further, Magnon and Babineaux testified that one of the light fixtures in the showroom smoked and nothing done had corrected the problem. They testified that the warehouse lights would reignite after being turned off at the switch. This problem, too, continued to occur through the time of trial. Additionally, Magnon testified that the lights in the cement plant, which is under an open shed behind the warehouse, would also go on and off by themselves intermittently. Jeff Davis confirmed that he saw the lights in the warehouse go on and off by themselves and that he had observed smoke or vapor coming off a light in the showroom. He testified that he felt that the problems with the lights going out are problems with the fixtures rather than a problem with electrical distribution from the city. At best Jason Magnon and his expert, Craig Hebert, could only state that they had not seen some of the problems. They were unable to establish either that the problems did not exist or that they had been corrected. Although Hebert apparently felt that some of the problems might have been caused by fluctuations in the amount of electricity from the local utility system, he admitted that a voltmeter installed by the Lafayette Utility System showed no fluctuation sufficient to cause the lighting problems.

Davis testified that it would cost $12,000.00 to change all the fixtures and the wiring between the fixtures and the switches, which he felt would eliminate the problems. No testimony was elicited to call this estimate into doubt. Accordingly, we find that National is entitled to a reduction in the contract price of $12,000.00.

5

*Offset*

Additionally, National claims offsets for pressure washers received by the Magnons and for a tractor used by Wendell Magnon. On appeal, Magnon does not assert that an offset is not due for the pressure washers, rather they contest the amount allowed for the offset. It is undisputed that four members of the Magnon family, the three Magnon brothers and their father, each received a 9 horsepower 3000 psi Honda pressure washer from National and that there was an agreement to offset the price against the amount owed by National to Magnon. It is further uncontested that the washers cost National $1,197.00 each. National requests an offset of $2,550.00 each or $10,200.00. Magnon suggests that a more reasonable charge would be $1,363.75 each or $5455.00, which would include a profit of 25% over the purchase price. Additionally, Magnon has submitted a price quote from Home Depot of $4,287.10 for four 13 horsepower 3500 psi pressure washers. Beadle testified that $2,550.00 was his standard retail price for the pressure washers and that he had told the Magnons that this would be the price charged for the washer they wanted. He further explained that the washers he provided, in contrast to washers which can be purchased at Home Depot, which are direct drive, have a gear reduction between the pump and the engine and do not require the greater horsepower to drive the pump. Further, he stated that the pumps on the washers he provided have an unconditional five year warranty and that cleaning chemicals and bleach can be run through them without damaging the units. Given this testimony, we find that National established its entitlement to an offset of $10,200.00 for the pressure washers provided to the Magnons.

National claims an offset of $23,860.00 for a three month rental of a tractor to Wendell Magnon. Wendell Magnon admitted that he used the tractor. However, he

6

testified that Chuck Beadle understood that it was not being used by Magnon Electric, but in a personal venture of his own, unrelated to Magnon Electric. He testified that when he told Beadle about his new venture, Beadle offered to allow him to use whatever equipment he needed. He further testified that there was no discussion of price and that he was being allowed to use the tractor free of charge. Wendell testified that the tractor was delivered to the site and was used for two or three days. At that time, he tried to get it picked up, but that National did not do so for two or three months. Beadle admitted that he did tell Wendell that if he needed any equipment that National would take care of it. However, he denied saying that National would provide equipment free of charge. It is notable however, that while the tractor was used by Wendell in November 1999, no invoice for its use was sent to Magnon until July 2001, shortly after the lien was filed in this matter, as Beadle readily admitted. There is no evidence of any attempt to collect for tractor rental during the time between its use and the lien filing. Further, nothing in Beadle's testimony suggests that he believed the tractor was being used by Magnon Electric. After reviewing the evidence, we find that National has not shown that Magnon owed it any amount for the use of the tractor. Therefore, no offset will be allowed.

*Additional Charge ($938.00)*

Magnon claims that it is entitled to collect, not only the contract price, but an additional $938.00 for additional work done for National, over and above the contract work. The service order submitted by Magnon shows that on June 2, 1999, they added a circuit for a steam cleaner, changed the wire for an air compressor, and changed plugs for a water heater, dryer, and dishwasher. National disputes this and asserts that the work should have been done as part of the original contract and that National had

7

to return to correct this omission. We note that Magnon has the burden of proof in connection with this claim. After reviewing the evidence, we find that Magnon has not carried its burden. The claim rests on bare allegations by Magnon that the work was not included in the original contract. While the plans for the project would have shown what was and was not included in the contract, they were not admitted into evidence. Accordingly, we find that Magnon has not proved that it is entitled to an additional $938.00 for this work.

CONCLUSION

For these reasons, we affirm the trial court's denial of the claim for an additional $938.00. Further, we reverse the judgment of the trial court and render judgment in favor of Magnon Electric and against National Rental for $59,776.00 minus a credit of $12,000.00 required to correct defects and minus an offset of $10,200.00 for pressure washers provided to the Magnon family. Costs are to be paid 50% by Magnon Electric and 50% by National.

**AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.**.