HALL, Chief Judge.
In this action the owner/plaintiff seeks cancellation of several liens filed by the subcontractors/defendants, claiming they were untimely filed. The liens were filed by Ellis Millwork, Inc., American Glass, Inc., and Bossier Electrical Contractor, Inc., as a result of non-payment for work they performed on a building known as 6001 Financial Plaza in Shreveport, Louisiana. The issue to be decided in this case is when did “substantial completion” occur so as to begin the period for filing liens under the provisions of LSA-R.S. 9:4822(C) and (H).[1] The trial court determined the liens were timely filed and rejected plaintiffs demands. We affirm the trial court’s judgment.
The property involved was formerly owned by Savings Life Insurance Company (SLIC) and Consolidated Bankers Life Insurance Company (CBLIC).[2] SLIC constructed a four story building with glass wall construction on the property several years ago. On September 3, 1986, SLIC and CBLIC concluded negotiations with General Motors Acceptance Corporation (GMAC) for the leasing of 9,190 square feet of space on the fourth floor of the building for a term beginning December 1, 1986 to November 30, 1989. The owner was to construct improvements on the leased premises as per the tenant’s requirements.
On October 24, 1986, SLIC and CBLIC entered into a construction contract with C & L Construction Company (C & L) to perform the leasehold improvements for GMAC. The contract price was $134,-889.00. Construction was to commence immediately and according to the agreement be substantially completed within 75 calendar days. C & L did not bond the construction project and did not record the construc *509 tion contract. Because no notice of the general contract and no notice of termination of work were filed, the defendant subcontractors were required to file their claims within sixty days after the substantial completion or abandonment of the work. LSA-R.S. 9:4822(C).
The lease space to be finished out for GMAC was an open area arrangement and the employees were to operate out of modular furniture that partitioned one employee from another, but did not create a walled-in effect. The modular furniture had its own electrical system, computer and telephone connections, and yet was not of significant height to restrict the flow of light from the outside glass walls. The executive offices consisted of glass walls and a few other walls were to be constructed for storage and break areas.
When the construction began the leased space was unimproved. It was known in the construction industry as a shell, an unfinished area of a building. The area was previously equipped with electrical wiring and conduit in the outside walls. The heating and air conditioning ducts were in place, the sprinkler heads were in position, and the ceiling grid was installed. The office space had a concrete floor, no interi- or walls and approximately twelve sets of four tube fluorescent lights spread out over the space.
Construction began before the 1st of November and the space was estimated to be 39% complete on November 25th. On December 22nd, C & L’s invoice reflected the space was 79% complete. On January 27, 1987, C & L submitted its invoice for the balance of the construction contract price. One of the partners of C & L, Charles Mitchell, testified that even though the invoice reflected the complete balance due, the project was not actually completed. C & L billed 100% of the project because they felt that by the time they were paid the job would be complete.
GMAC moved into the leased space on January 23, 1987 and began its business operations from the space on January 26, 1987. Although GMAC was operating out of the premises on the 26th, 85 of the estimated total 104 ceiling lights were not delivered to the job site until January 29, 1987. The installation of the ceiling lights by Bossier Electrical Contractor, Inc. was completed on February 3, 1987. A “punch list” of items to be completed which comprised approximately 10% of the total job was compiled on January 23, and 90% of the “punch list” was completed by January 30, 1987. On February 6, 1987 GMAC signed the punch list indicating the completion and acceptance of the work. The liens at issue were not filed until April 3, 1987.
The trial court found the construction was not substantially completed as defined by LSA-R.S. 9:4822(H) until February 3, 1987 because the main lighting had not been installed. The trial court found the installation of the main lighting was not “minor or inconsequential” and that the lien period did not begin to run until the day after the lighting was completely installed, February 4, 1987. Therefore, the trial court determined the liens filed on April 3 were timely as being within the 60 day period.
Plaintiff argues that the date of occupancy by GMAC should be considered the date the premises became substantially complete. It is argued that only minor and inconsequential items remained unfinished when GMAC moved in and opened for business.
Under LSA-R.S. 9:4822(C) and (H), where no notice of contract and notice of termination of the work is filed, liens must be filed by subcontractors within 60 days after the work is substantially completed. The work is considered as substantially completed (1) on the date the last work is performed on or the last materials are delivered to the site or (2) on such earlier date when the owner accepts the improvement, possesses or occupies the property if only minor or inconsequential matters remain to be finished or minor defects or errors in the work are to be remedied. Occupancy of the property does not trigger the beginning of the period for filing liens if major or consequential construction items are unfinished or major remedial work remains to be done.
In deciding whether the “owner occupancy” test of Subsection (2) of Section *510 4822(H) controls in this case we must determine whether the unfinished matters were “minor or inconsequential”. We agree with the trial court that the installation of the lights was not a “minor or inconsequential” matter. The contract with Bossier Electrical totaled $35,000 including material and labor, but not including change orders. Bossier Electrical paid over $5,000 for the lights which were not delivered until January 29. Installation of the ceiling lighting necessarily is a major and consequential part of the construction of a large area of office space in a building, even though the occupant might, as in this case, get by temporarily with the pre-exist-ing fixtures and natural lighting. The lights were clearly a substantial part of the contract price and not minor or remedial in nature. The evidence indicates that Bossier Electrical acted in good faith and installed the lights as soon as they were delivered.
Having determined the premises were occupied when major or consequential matters remained to be finished, it follows that the construction was not substantially completed under subsection (2) of Section 4822(H) when GMAC moved in.
Plaintiff argues that even if the work to be done was not minor when GMAC moved in, it became minor at some point shortly thereafter when most of the lighting was installed. We reject that argument because it would leave the beginning of the lien period even more uncertain if a day by day evaluation of work to be done was necessary in order to determine the commencement of the lien period. The better interpretation is that where the owner occupies the premises, but significant items of work remain to be done, substantial completion does not occur until the unfinished work is completed, that is, the date the last work is performed or materials delivered as described in Subsection (1) of Section 4822(H).
The 60 day lien period began to run no earlier than February 4, 1987. The liens filed on April 3, 1987 were within the 60 day lien period and are, therefore, timely.
Both sides cite numerous cases decided under the Private Works Act as it existed prior to the revision adopted by Act 724 of 1981, effective January 1,1982. See Lighting, Inc. v. Trans-Gulf Construction Co., Inc., 324 So.2d 454 (La.1975); Watts Brothers Builders, Inc. v. Altex Ready Mix Concrete Corporation, 349 So.2d 1304 (La. App. 1st Cir.1977), writ denied 352 So.2d 1032 (La.1977); Lard Electric Co., Inc. v. Miller & Associates Construction Company, 267 So.2d 616 (La.App. 3d Cir.1972); Albert K. Newlin, Inc. v. Weingarten’s Markets Realty Co., 253 So.2d 594 (La. App. 3d Cir.1971); LeBlanc v. Gene Cass, Inc., 306 So.2d 768 (La.App. 4th Cir.1975); Romero & Sons Lumber Company v. Ba-bineaux, 151 So.2d 714 (La.App. 3d Cir.1963); Jeffers Trust v. Justice, 253 So.2d 234 (La.App. 4th Cir.1971); Hortman-Salmen Company, Inc. v. White, 168 La. 1067, 123 So. 715 (1929); Keller Building Products of Baton Rouge, Inc. v. Siegen Development Co., 312 So.2d 182 (La.App. 1st Cir.1975), writ denied 314 So.2d 736 (La.1975); Capitol Hardware Co., Inc. v. Allen Construction Co., 248 So.2d 396 (La. App. 1st Cir.1971); Taylor Seidenbach, Inc. v. Healy, 90 So.2d 158 (La.App. Orleans 1956); Louisiana Plumbing and Heating, Inc. v. Miranne and Harris, Inc., 181 So.2d 261 (La.App. 4th Cir.1965). Relative to the issue involved in this case, the revision generally incorporated the existing jurisprudence into the statute. Our decision in this case is consistent with the principles of prior cases decided under the former statute, but necessarily is controlled by and gives effect to the precise language of the revised statute.
We affirm the judgment of the trial court which denied cancellation of the liens, at plaintiff-appellant’s costs.
AFFIRMED.
ON APPLICATION FOR REHEARING
Before HALL, MARVIN, LINDSAY, JASPER E. JONES and NORRIS, JJ.
Rehearing denied.

. LSA-R.S. 9:4822(C) and (H):
C. Those persons granted a claim and privilege by R.S. 9:4802 for work arising out of a general contract, notice of which is not filed, and other persons granted a privilege under R.S. 9:4801 or a claim and privilege under R.S. 9:4802 shall file a statement of their respective claims and privileges within sixty days after:
(1) The filing of a notice of termination of the work; or
(2) The substantial completion or abandonment of the work, if a notice of termination is not filed.
******
H. A work is substantially completed when:
(1) The last work is performed on, or materials are delivered to the site of the immovable or to that portion or area with respect to which a notice of partial termination is filed; or
(2) The owner accepts the improvement, possesses or occupies the immovable, or that portion or area of the immovable with respect to which a notice of partial termination is filed, although minor or inconsequential matters remain to be finished or minor defects or errors in the work are to be remedied.

. At the time this suit was filed, Southmark Corporation owned the premises. The present owner is Southmark Commercial Management Inc. which was added as an additional plaintiff/appellant in this proceeding by order of this court.