571 So.2d 802 (1990)
WINFORD COMPANY, INC., Plaintiff,
v.
WEBSTER GRAVEL AND ASPHALT, INC., Ark-La-Tex Auto Auction, Inc., et al., Defendants.
No. 21,994-CA.
Court of Appeal of Louisiana, Second Circuit.
December 5, 1990.
*803 Campbell, Campbell & Johnson by James M. Johnson, Minden, for appellee.
Fish & Montgomery by John W. Montgomery, Minden, for defendant Webster Gravel & Asphalt Co., Inc.
Robert J. Donovan, Jr., Shreveport, for defendants-appellants Edward L. Blakey, Katherine Dees Blakey and Ark-La-Tex Auto Auction, Inc.
Before SEXTON, NORRIS and HIGHTOWER, JJ.
HIGHTOWER, Judge.
This is an appeal from a judgment awarding the contract price for construction of an asphalt parking lot and recognizing a Private Works Act lien. For the reasons hereinafter expressed, we affirm in part and reverse in part.

FACTS AND BACKGROUND
In 1983, Webster Gravel and Asphalt, Inc. ("Webster") orally contracted to construct a parking lot for Ark-La-Tex Auto, Inc. ("Ark-La-Tex") for a total price of $71,409. The facility would be placed upon *804 land owned by Edward Blakey and his wife, but leased to Ark-La-Tex, a corporation owned entirely by the Blakeys and engaged in the automobile auction business. Webster subcontracted all phases of the project, with Haddox Contractor's, Inc. ("Haddox") to prepare the soil or base, and with Winford Company, Inc. ("Winford") to do the surfacing. Haddox and Winford would receive $49,960.30 and $16,332.40, respectively, leaving the remaining $5,090.30 to Webster.
Blakey, acting on behalf of Ark-La-Tex, furnished no written plans or specifications. He prescribed, however, that the soil preparation be accomplished with lime only and that an asphalt penetration seal then be applied to the surface. Apparently, his knowledge of the technical aspects had been acquired through conversations with other persons involved in such work. Although the testimony conflicted, there is evidence that the presidents of the three construction companies, J.W. Dickinson, Lamar Haddox, and Jim Winford, voiced their concerns that the chosen method of construction might be inadequate. Indeed, Blakey declined suggestions for the utilization of soil cement as a ground stabilizer.
Haddox performed the ground preparation sometime before September 17, 1983, the day that Winford applied the penetration seal to the surface. Winford's job superintendent testified that he mentioned the instability of the base in several conversations with Blakey. Nevertheless, the Ark-La-Tex president did nothing, and the surface laying proceeded. Upon completion of the work, the lot rapidly deteriorated. Thereafter, in February 1984, the lessee corporation employed another contractor to construct a new parking lot on the site.
In August 1984, Winford filed suit against Webster, Ark-La-Tex, and the Blakeys, for the $16,332.40 amount and recognition of a lien previously filed on the Blakey property. Webster answered and also sought, by third party demand, recovery of its $71,409 contract price from Ark-La-Tex and the Blakeys (that corporation and those individuals to be sometimes collectively referred to as "defendants"). Claiming to be a party to the general contract, Haddox intervened against defendants. In addition to answering all claims, Ark-La-Tex and the Blakeys presented third party and reconventional demands against the three contractors, alleging damages for defective construction and improper workmanship.
After one day of trial on January 15, 1987, the proceedings adjourned to a later date. Subsequent deaths of Webster's president and an attorney's family member extended the postponement until December 21 and 22, 1988. In a written opinion, the trial court found that a contract existed between Ark-La-Tex and Webster. The decision thus rejected Haddox's intervention, that corporation and Winford being held to be subcontractors.
The trial court further concluded that the failure of the parking lot surface did not result from improper workmanship or materials, but from improper design for which responsibility rested with Ark-La-Tex. Applying LSA-R.S. 9:2771, which relieves a contractor from liability for deterioration or defects resulting from the insufficiency of plans and specifications which he does not provide, the trial court deemed Webster, Haddox, and Winford blameless. Hence, the court awarded the full contract sum to Webster, and granted Winford judgment against Webster for its subcontract price. Additionally, the judgment recognized Winford's lien. Haddox, not having made demand against Webster, received no award after rejection of the intervention. Claims by the Blakeys and Ark-La-Tex against the three contractors were rejected. This appeal, by only Ark-La-Tex and the Blakeys, followed the overruling of a motion for new trial.

ACCOUNTABILITY OF THE CONTRACTORS
Several assignments of error concern the judgment in favor of Webster and the rejection of appellants' demands against the construction firms. Appellants maintain the trial court did not hold the contractors to the duty, implicit in every building contract, of constructing work that is suitable *805 for its intended purpose and free from defects in materials and workmanship. Additionally, LSA-R.S. 9:2771 is asserted to be inapplicable since written plans and specifications did not exist. Appellants further contend that the evidence failed to preponderate that the oral contract allocated the risk of loss for defects to Ark-La-Tex.
Of course, this court's review is constrained by the manifest error standard, which demands that findings of fact by the trial court be given great deference and disturbed only when clearly wrong. Even if there is conflict in the testimony, reasonable inferences of fact should not be disturbed. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), on remand, 370 So.2d 1262 (La.App. 3d Cir.1979), writ denied, 374 So.2d 660 (La.1979). Also, when findings of fact are based on decisions regarding the credibility of witnesses, respect should be given those conclusions, for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on understanding and believing what is said. Rosell v. ESCO, 549 So.2d 840 (La.1989). Indeed, this court is mandated not to substitute its own evaluations and inferences for those of the trier of fact. Wood v. Haas, 451 So.2d 160 (La.App. 1st Cir.1984), writ denied, 458 So.2d 124 (La. 1984).
The record discloses that Blakey discussed the project with several people knowledgeable in the field of parking lot construction and obtained a soil analysis from Southwest Laboratories. His specifications for the job, which he described as being "in his head," required treatment of the soil base with lime only, followed by application of a sealant consisting of an asphalt and pea gravel mixture. The evidence preponderates that subsequent construction of the lot occurred in accordance with that plan.
The testimony of R.E. Dillon, an expert in the field of civil engineering and the design and construction of parking lots and highways, indicated that the project met the requirements of the plans and specifications. He further concluded that no deficiencies existed in the actual work methods employed by the contractors. Instead, he stated, defective design caused the facility's failure. From his analysis, the structural base, although complying with the plans and specifications, inadequately supported the repetitive loading which occurred on the area. His review also showed the lime-only treatment to be unsuitable for the ground involved, and that under the circumstances a need existed for stabilization of the base through the use of soil cement. Indeed, Dillon testified that application of an even greater quantity of lime than that utilized would not have provided a sufficient foundation. Hence, considering the entire record, the evidence clearly supports the trial court's conclusion that improper design, not poor workmanship or defective materials, resulted in the failure of the parking lot.
Finding the project's defective design caused the deterioration of the parking lot surface, the trial court cited LSA-R.S. 9:2771 and relieved Webster, Haddox, and Winford of responsibility. That section states:
No contractor shall be liable for destruction or deterioration of or defects in any work constructed, or under construction, by him if he constructed, or is constructing, the work according to plans or specifications furnished to him which he did not make or cause to be made and if the destruction, deterioration or defect was due to any fault or insufficiency of the plans or specifications. This provision shall apply regardless of whether the destruction, deterioration or defect occurs or becomes evident prior to or after delivery of the work to the owner or prior to or after acceptance of the work by the owner. The provisions of this section shall not be subject to waiver by the contractor.
Thus, the statute departs from the more general standard implicitly obligating the builder in every construction contract to perform his work in a good workmanlike manner, free from defects in materials or workmanship. Tex-La Properties v. South State Insurance, 514 So.2d 707 (La. *806 App. 2d Cir.1987). See also LSA-C.C. Arts. 2762, 2769.
Appellants contend the provision is inapplicable since the undertaking did not involve written plans and specifications. We disagree. It would defeat the intent of LSA-R.S. 9:2771 to construe it as being available only in instances where plans and specifications have been reduced to a written instrument. The statute provides a safe harbor to the contractor so long as plans and specifications are not provided by him. In such an instance, he is immune from liability upon building in compliance. City of Covington v. Heard, 428 So.2d 1132 (La.App. 1st Cir.1983). Thus, the trial court did not err in deeming the section applicable.
In short, the contractors clearly sustained their burden of persuasion, having shown that they complied with plans and specifications, as provided by Ark-La-Tex, and that no deficient workmanship or materials caused the failure of the parking lot.[1]

EXPERT WITNESSES
Dillon, presented by Haddox and Webster, remained in the courtroom throughout the trial. As stated above, he concluded that defective design, not substandard workmanship or materials, resulted in the rapid deterioration of the work done by the contractors. Appellants, though, challenge the lower court's acceptance of such testimony over that of their expert, who asserted improper construction or workmanship caused the parking lot's failure.
Of course, the effect and weight to be given expert testimony is within the broad discretion of the trial judge. Sawyer v. Niagara Machine & Tool Works, 535 So.2d 1057 (La.App. 2d Cir.1988), writ denied, 536 So.2d 1222 (La.1989); Friday's Plumbing and Heating Co. v. Byers, 415 So.2d 256 (La.App. 2d Cir.1982). The importance placed upon such testimony is largely dependent on the expert's qualifications and the facts that form the basis of his opinion. Middle Tennessee Counsel, Inc. v. Ford, 274 So.2d 173 (La.1973). And, where two expert opinions differ factually, the leeway accorded the trial court allows it to favor one over the other. Carpenter v. Hartford Fire Ins. Co., 537 So.2d 1283 (La.App. 2d Cir.1989); Sawyer, supra; McDonald v. Illinois Central Gulf Railroad Co., 546 So.2d 1287 (La.App. 1st Cir.1989), writ denied, 551 So.2d 1340 (La.1989).
In the present case, Dillon's testimony presented a reasonable explanation for the failure of the parking lot and emerged strongly supported by the evidence. Vast experience in the design and construction of parking lots and highways, combined with consideration and evaluation of the technical data available, substantially strengthened his conclusions. Thus, the decision to accept his opinion in preference to that of appellants' expert rested well within the prerogative of the trial court.

VALIDITY OF PRIVATE WORKS ACT LIEN
Another assignment of error concerns the recognition of Winford's lien filed on November 28, 1983, against the Blakey property. Appellants contend that the privilege had been appropriately cancelled after Winford failed to record a notice of lis pendens, as supposedly required by LSA-R.S. 9:4833(F).
Without addressing whether that cancellation properly occurred, the record clearly discloses an untimely filing of Winford's lien. The Private Works Act, LSA-R.S. 9:4801 et seq., protects those who work on the creation, construction, repair or improvement of private immovable property. It extends a claim or privilege to two specific categories of persons, viz., those who deal with the owner of the property, LSA-R.S. 9:4801, and those dealing with the contractors or subcontractors, LSA-R.S. 9:4802. Cirlot, Co. v. Lake Forest, Inc., 475 So.2d 799 (La.App. 4th Cir.1985), *807 writ denied, 477 So.2d 1128 (La.1985). The time period for asserting a privilege is determined by the category a claimant falls within and whether a notice of contract has been filed. LSA-R.S. 9:4822. A subcontractor, if a notice of contract has been properly filed, must file his claim within 30 days after the filing of the notice of termination of work. LSA-R.S. 9:4822(A). If no notice of contract is filed, however, subcontractors are accorded 60 days after either the substantial completion of work or filing of a notice of termination. LSA-R.S. 9:4822(C). Work is considered "substantially complete" (1) when the last work is performed, or last materials delivered to the site, or (2) when, on an earlier date, the owner accepts the improvement and possesses or occupies the immovable, even if minor or inconsequential matters remain to be finished, or minor defects or errors in the work are still to be remedied. Southmark v. Ellis Millwork, Inc., 535 So.2d 507 (La.App. 2d Cir.1988), writ denied, 539 So.2d 632 (La.1989).
The present record fails to indicate whether a notice of contract and/or notice of termination of work was filed. We are thus unable to determine which of the two prescriptive periods, 30 or 60 days, applied. However, even assuming the longer period, Winford did not accomplish timely registration.
The work on the parking lot concluded on September 17, 1983. Winford's job superintendent testified that on that date their firm finished applying the penetration seal, the final step of the project, even though Blakey expressed dissatisfaction in the results. Substantial completion having clearly occurred, the statutory period commenced to run on that date. Thus, the lien, filed untimely on November 28, 1983, should not have been recognized.

NEW TRIAL
Appellants also maintain that the trial court erred in denying the motion for new trial. It is contended newly discovered evidence necessitated granting that request.
According to LSA-C.C.P. Art. 1971, et seq., a new trial may be granted when (1) the judgment is clearly contrary to the law and evidence, (2) newly discovered evidence has been found, (3) improper jury behavior occurred, or (4) good grounds exist. Petitto v. McMichael, 552 So.2d 790 (La.App. 1st Cir.1989). If an application for new trial is predicated upon alleged newly discovered evidence, the moving party bears the burden of proving that: (1) the evidence was discovered after the trial, (2) the evidence could not have been discovered prior to trial through the exercise of due diligence, and (3) the newly discovered evidence would tend to change the result of the first trial. Barker v. Rust Engineering, Co., 428 So.2d 391 (La.1983); Orlando v. Polito, 228 La. 846, 84 So.2d 433 (La. 1955); Brousseau v. Tucker, 479 So.2d 446 (La.App. 1st Cir.1985), writ not considered, 481 So.2d 1329 (La.1986).
To the motion for new trial, appellants attached certain newspaper articles concerning involvement by the presidents of Winford and Haddox in a bid rigging scheme. The reports pertained to efforts by several northwest Louisiana contractors to obtain state highway contracts. Asserting lack of knowledge of such events prior to media disclosures in July 1989, the motion requested that the case be reopened to receive evidence of participation, if any, by the two individuals in the fraudulent scheme.
We are convinced, however, that no error occurred in reference to the motion. Even though known fraudulent activity might well bear upon an evaluation of credibility, it is unlikely that the outcome of the present case would have been different, considering the entire record. The testimony of Winford's and Haddox's presidents clearly did not stand alone. The court heard other Winford employees, in addition to the president of Webster, and a highly qualified civil engineer, Dillon. As witnesses, they all related substantially similar information concerning the circumstances and performance of the parking lot work. Even testimony by Blakey, in many respects, supported the trial court's disposition. Thus, the judgment being well *808 grounded upon more than the testimony of the two mentioned company officials, one of whom is apparently now deceased, denial of a new trial did not constitute error.

CONCLUSION
For the foregoing reasons, we reverse the recognition of the Winford lien against the Blakey property, but affirm the judgment of the trial court in all other respects. Costs of the appeal are assessed to appellants.
AFFIRMED IN PART; REVERSED IN PART.
NOTES
[1] Appellants' other previously mentioned assignment, that the contractors failed to establish that the risk of loss or defects had been contractually assumed by Ark-La-Tex, is of little consequence. Under the factual findings of the trial court, with the appellant corporation having furnished the plans and specifications, LSA-R.S. 9:2771 gives rise to the same result.