CHARLES R. JONES, Judge.
hThe appellant, Esther Lingoni, appeals an adverse judgment granting the defendants’ motion for summary judgment. We affirm.
Paradise Gardens Landscaping, Inc., (Paradise Gardens) contracted with Shamrock Construction Co., Inc. (Shamrock) to install landscaping and irrigation systems at Hibernia Bank located at 5696 Bullard Avenue in New Orleans, Louisiana, in February 1996. Paradise Gardens performed all of its obligations under its contract with Shamrock Construction Co., Inc., including the furnishing of the materials and labor necessary to complete the landscaping, and irrigation services as stipulated in the contract, plans and or specifications. There was no reason to believe that its adherence to the plans and specifications would create a hazardous condition. In particular, all sprinkler heads were installed, as required by the plans and specifications, at least 4 inches from the sidewalk pavement.
The work of Paradise Gardens was supervised and approved by the landscape architect on the job, Daly-Sublette Landscape Design & Development, Inc. (Daly-Sublette), and by the general contractor, Shamrock.
No disagreement or dissatisfaction with said landscaping and irrigation services was ever conveyed to Paradise Gardens by any person, firm or entity.
|2The work of Paradise Gardens was completed and accepted by the general contractor, Shamrock. The work was also accepted by the owner, Hibernia National Bank, by the architect, Sizeler Architects, Inc., and the landscape architect, Daly-Sublette.
On December 17, 1999, Ms. Lingoni suffered serious injuries after tripping over a pop-up sprinkler head outside of the Hibernia Bank at the aforementioned location. The sprinkler head’s positioning near the intersection of two sidewalks purportedly made it difficult to be seen and dangerous to patrons, including Ms. Lingo-ni. Ms. Lingoni’s fall allegedly caused her to suffer numerous injuries.
On December 7, 2000, Ms. Lingoni filed suit against Hibernia bank and its insurer, St. Paul Fire and Marine Insurance Company. Since a number of entities were involved with the landscape architectural design and placement at the Hibernia location, she added defendants Sizeler, Daly-Sublette, Shamrock and Paradise Gardens.
Shortly thereafter, Ms. Lingoni settled with Hibernia and its insurer and dismissed her claims against Hibernia and its insurer. Sizeler, Daly-Sublette, Shamrock and Paradise Gardens all filed motions for summary judgment. As contractors, Shamrock and Paradise Gardens invoked the immunity of La. R.S. 9:2771, conferred on contractors who construct work accord *374 ing to plans and specifications provided by another party. Shamrock and Paradise Gardens also submitted that they owed no duty to plaintiff because a reasonable amount of time had elapsed between their completion of the work and plaintiffs accident.
The other two landscape-architectural design/placement defendants, Sizeler Architects (Sizeler) and Daly-Sublette filed Motions for Summary Judgment, claiming that Ms. Lingoni could not meet her burden of establishing architect |anegligence, because she has not designated an architectural expert. In support of their motion for summary judgment, Sizeler and Daly-Sublette submitted the following documents into evidence at the hearing on the Motion for Summary Judgment:
A. A “Certificate of Substantial Completion” for the project stating that “[t]he Work performed under this Contract has been reviewed and found, to the Architect’s best knowledge, information and belief to be substantially complete ...” and stating that “[Hibernia] accepts the work or designated portion thereof as substantially complete and will assume full possession thereof at 12:01 a.m. on January 21,1997;
B. A set of punch lists from Sizeler Architects, Inc. and Daly-Sublette, neither of which contained any reference to deficient placement of automatic irrigation system sprinkler heads;
C. A letter from Daly-Sublette dated February 3, 1997 indicating that “[a]ll punch list items have been taken care of by the Landscape Contractor and Provisional Acceptance has been given;” and,
D. A City of New Orleans City Planning Commission memorandum indicating that the landscaping for this project had been “installed as per approved drawings dated July 17,1996.”
The district court heard all of the motions on January 23, 2009, considered the motions, evidence, memoranda and argument of counsel, and rendered summary judgment for each of the defendants. The court signed the judgment, and designated it final and appealable, on March 4, 2009. This timely appeal followed.
In the instant appeal, Ms. Lingoni raised the following assignments of error:
1. The district court erred in granting summary judgment in favor of Paradise Gardens because genuine issues of material fact are in dispute regarding whether the placement of the sprinkler head at the accident site precludes the application of the contractor immunity statute, La. R.S. 9:2771, in favor of Paradise Gardens.
|42. The district court erred in granting summary judgment in favor of Paradise Gardens because genuine issues of material fact exist regarding whether too much time had lapsed between Paradise Gardens’ completion of the job and the incident in question.
3. The district court erred in granting summary judgment in favor of Shamrock because genuine issues of material fact are in dispute regarding whether the placement of the sprinkler head at the accident site precludes the application of the contractor immunity statute, La. R.S. 9:2771, in favor of Shamrock.
4. The district court erred in granting summary judgment in favor of Shamrock because genuine issues of material fact exist regarding whether too much time had lapsed be *375 tween Shamrock’s completion of the job and the incident in question.
5. The district court erred in granting summary judgment in favor of Daly-Sublette because genuine issues of material fact exist regarding whether expert architectural testimony is required in this matter.
6. The district court erred in granting summary judgment in favor of Siz-eler because genuine issues of material fact exist regarding whether expert architectural testimony is required in this matter.

DISCUSSION

This Court reiterated the standard of review on a motion of on a motion for summary judgment as follows:
Favored in Louisiana, the summary judgment procedure ‘is designed to secure the just, speedy, and inexpensive determination of every action’ and shall be construed to accomplish these ends. King v. Parish Nat’l Bank, 04-0337, p. 7 (La.10/19/04), 885 So.2d 540, 545 (quoting La. C.C.P. art. 966(A)(2)). An appellate court reviews a district court’s decision granting summary judgment de novo, using the same standard applied by the trial court in deciding the motion for summary judgment. Schmidt v. Chevez, 00-2456, p. 4 (La.App. 4 Cir. 1/10/01), 778 So.2d 668, 670. Under this standard, summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together "with the affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
Sanchez v. Harbor Const. Co., Inc., 2008-0316, pp. 3-4 (La.App. 4 Cir. 10/1/08), 996 So.2d 584, 587. Further,
A motion for summary judgment will be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La.Code Civ. P. art. 966(B). Pursuant to this article, the burden of producing evidence at the hearing on the motion for summary judgment is on the mover (normally the defendant), who can ordinarily meet that burden by submitting affidavits or by pointing out the lack of factual support for an essential element in the opponent’s case. At that point, the party who bears the burden of persuasion at trial (usually the plaintiff) must come forth with evidence (affidavits or discovery responses) which demonstrates he or she will be able to meet the burden at trial. Once the motion for summary judgment has been properly supported by the moving party, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion.
Cyprien v. Board of Sup’rs ex rel. University of Louisiana System, 2008-1067, p. 5 (La.1/21/09), 5 So.3d 862, 866, 243 Ed. Law Rep. 991 (citing Wright v. Louisiana Power & Light, 06-1181 (La.3/9/07), 951 So.2d 1058; Babin v. Winn-Dixie Louisiana, 00-0078 (La.6/30/00), 764 So.2d 37).
Additionally, considering actions arising out of alleged defects in workmanship, “An owner seeking to recover from a contractor for defective workmanship bears the burden of proving the existence and nature of the defects and that the defects were due to faulty materials or workmanship.” Taaffe v. Factory Direct Installations, Ltd., 2008-0175, p. 13 (La.App. 4 Cir. 4/15/09), 13 So.3d 562, 568 citing Hernandez v. Martinez, 2000-1282 *376 (La.App. 5 Cir. 2/28/01), 781 So.2d 815, 821; La. C.C. article 2769.
1 ^Furthermore, pursuant to La. R.S. § 9:2771, entitled, Non-liability of contractor for destruction or deterioration of work:
No contractor, including but not limited to a residential building contractor as defined in R.S. 37:2150.1(9), shall be liable for destruction or deterioration of or defects in any work constructed, or under construction, by him if he constructed, or is constructing, the work according to plans or specifications furnished to him which he did not make or cause to be made and if the destruction, deterioration, or defect was due to any fault or insufficiency of the plans or specifications. This provision shall apply regardless of whether the destruction, deterioration, or defect occurs or becomes evident prior to or after delivery of the work to the owner or prior to or after acceptance of the work by the owner. The provisions of this Section shall not be subject to waiver by the contractor.
Although Ms. Lingoni asserts six assignments of error, she simply argues the district court erred in granting the motions for summary judgment in favor of Paradise Gardens, Shamrock, Sizeler, and Daly-Sublette, when genuine issues of material fact are in dispute regarding the placement of the sprinkler head at the accident location, precluding the application of the ' contractor immunity statute, La'. R.S. 9:2771.
. Ms. Lingoni argues that La. R.S. 9:2771 provides immunity for a building contractor who follows established plans and specifications, unless the contractor “had reason to believe that working in compli-anee with the plans and specifications would create a hazardous condition.” She maintains that Paradise Gardens’ and Shamrock’s arguments that their own self-serving affidavits and the certificates of completion by other defendants do not satisfy the issue of whether there was compliance with applicable specifications and guidelines.
Ms. Lingoni also argues that the arguments by Paradise Gardens and Shamrock on the immunity issue ignored direct evidence that the sprinkler head in |7question was not located at the location designated in the plans and specifications for the Hibernia Bank in question. She contends that the protections offered by La. R.S. 9:2771 are not extended where the plans and specifications are not properly followed or if installation is not proper.[1] Thus, Ms. Lingoni argues that Paradise Gardens and Shamrock failed to establish that no genuine issues of material fact remain in dispute regarding whether Paradise Gardens and Shamrock properly followed the plans and specifications set forth for the sprinkler placement, and whether installation of the sprinkler head in question was performed properly.
Ms. Lingoni argues that Brian Sublette, the designated corporate representative of defendant, Daly-Sublette, testified that the sprinkler head needed to be placed at least 4 inches from the intersecting paved walkways that marked the site of the accident in this case, in order to avoid presenting a trip hazard.
However, Ms. Lingoni contends that despite Mr. Sublette’s designation on the schematics, the sprinkler head in question was positioned less than one inch from the accident site. She points out that when her expert, Wilfred Gallardo, measured *377 and photographed the site in question, he determined that the sprinkler was actually positioned less than one inch from the paved walkway in question.
Ms. Lingoni argues that Paradise Gardens and Shamrock have offered no explanation as to why the sprinkler head was not positioned correctly at the time of her accident. She argues that Paradise Gardens and Shamrock have gone to great lengths to suggest that the sprinkler head in question must have been purposefully moved, kicked by pedestrians, or itself moved over time. However, she asserts that Paradise Gardens and Shamrock acknowledged that these suppositions are merely ^speculations. She also asserts that the defendants failed to offer any evidence to establish that the sprinklers were in fact moved by Hibernia or over time by pedestrian traffic.
Additionally, Ms. Lingoni argues that Daly-Sublette’s representative acknowledged, via testimony, that moving the sprinkler heads in question required no small effort. The sprinkler lines were connected to numerous other heads and movement of the head in question would have required digging up the line, sawing into the line, moving the head, and securing a new coupling in place. She notes that testimony has further established that the amount of movement in question (approximately 3 inches if one presumed that the 4 inch requirement had been met in the first place, which the plaintiff contests), would have been unlikely from erosion in that area. She also contends that testimony established that such movement was unlikely (due to the brief duration between project completion and the accident) and that any natural actions such as root growth could have contributed to the movement in question, particularly in light of the types of plants in the area.
She asserts that while Paradise Gardens and Shamrock deny responsibility, Paradise Gardens and Shamrock offer no alternative theories in support of its contentions. She notes that instead, Paradise Gardens and Shamrock assert that because no punch list notation was made regarding the site in question, no problem must have existed. However, when pressed, the corporate representative of Shamrock testified that, although it was normal for him to measure distances such as the one in question, he admittedly had no recollection of whether such measurement actually occurred at the site.
|9Ms. Lingoni argues since genuine issues of material fact remain disputed on the issues addressed in Paradise Gardens’ motion for summary judgment, the district court erred in granting the motion.
Paradise Gardens and Shamrock argue it is well-settled, under Louisiana law, that La. R.S. 9:2771 establishes an immunity from liability for the defects of the work constructed by him if he can prove the work was constructed according to the plans and specifications furnished him, since the contractor is not the guarantor of the sufficiency of the plans and specifications drawn by another person. City of Covington v. Heard, 428 So.2d 1132, 1134 (La.App. 1 Cir.1983); Washington Parish Police Jury v. Belcher & Son, Inc., 215 So.2d 849 (La.App. 1 Cir.1968); Bernard v. State through DOTD, 93-1376 (La.App. 3 Cir. 6/1/94), 640 So.2d 694.
Paradise Gardens and Shamrock argue that the statute does not require the contractor to prove the fault or insufficiency of the plans or specifications; the immunity results from proof of compliance with said plans and specifications alone. La.R.S. 9:2771; See also, Allstate Enterprises, Inc. v. Brown, 39,467 (La.App. 2 Cir. 6/29/05), 907 So.2d 904 Heard, supra; Bernard, supra; See also, Menzie Tile Co., *378 Inc. v. Professional Centre, 594 So.2d 410 (La.App. 1 Cir.1991).
Paradise Gardens and Shamrock, relying on Winford Co. v. Webster Gravel & Asphalt, 21,994, 571 So.2d 802, 806 (La. App. 2 Cir.1990), assert that the statute, La. R.S. 9:2771, provides a safe harbor to the contractor so long as plans and specifications are not provided by him. Id., 571 So.2d at 806. Additionally, Paradise Gardens and Shamrock maintain that the immunity provided by this statute [La. R.S. 9:2771] applies to third-party tort claims such as involved in the | ininstant case (citing Morgan v. Lafourche Recreation Dist. No. 5, p. 7 (La.App. 1 Cir. 6/21/02), 822 So.2d 716, 721-722, writ denied, 2002-1980 (La.10/25/02), 827 So.2d 1156). “Louisiana appellate courts have extended the statutory immunity of LSA-R.S. 9:2771 to third-party tort claims.” Morgan at 722. (citing Richard v. State, 610 So.2d 839, 840 (La.App. 1st Cir.1992)).
In Heard, as in the instant case, defendant filed a motion for summary judgment attaching affidavits attesting to the defendant’s complete compliance with the contractual specifications. Accordingly, the district court, which was affirmed by the First Circuit, found that the City of Cov-ington failed to show a genuine issue of material fact exists as to defendant’s compliance with the specifications, and granted summary judgment in favor of defendant.
Paradise Gardens and Shamrock contend that the affidavits of Robert Bradley and Charlotte Carollo, the representatives of Paradise Gardens, and the evidence it introduced at trial establish that the district court did not err in granting the motion for summary. In particular, Paradise Gardens notes that it complied with all the plans and specifications of the contract between itself and Shamrock.
Paradise Gardens and Shamrock assert that the deposition of Brian Sublette, the supervising landscape architect, clearly states that he personally measured each and every sprinkler head twice after installation and determined that each such sprinkler head was at least four (4) inches from the sidewalk. It points to the following colloquy by Mr. Sublette in support of this contention:
Q. When you did your final walk through, if you recall, did you do measurements to make sure the sprinkler system was properly installed and the dimensions were correct?
A. Sure, it’s standard practice.
InQ. At the time of the installation by Paradise Garden and Landscaping, the sprinkler heads that you inspected were, at least, four inches away from the sidewalk?
A. Yes.
Q. You measured those?
A. Yeah.
Q. But there is nothing in the punch list items about the sprinkler heads being less than four inches?
A. No.
Q. To the pavement?
A. No.
Q. If there had been, you would have noted it in the punch list?
A. Sure.
Q. And in your final acceptance letter, you were satisfied that all of the punch list items had been taken care of?
A. Yeah.
Q. So it’s a fair statement that you inspected the sprinkler heads on, at least two occasions, and on each of those occasions it was at least four inches from the—
A. Correct.
Q. —from the pavement?
*379 Paradise Gardens and Shamrock contend that Ms. Lingoni does not offer any evidence to refute the evidence establishing that Paradise Gardens and Shamrock complied with all plans and specifications, including the requirement that the sprinkler head be installed at least four inches from the sidewalk. Instead, Paradise Gardens and Shamrock note that Ms. Lingoni’s entire argument rests on |12her assertion that the sprinkler heads were less than four inches from the sidewalk at or following the date of the accident. Paradise Gardens and Shamrock submit that Ms. Lingoni’s assertion is not sufficient to show that there is a material issue of fact concerning Paradise Gardens’ and Shamrock’s compliance with the plans and specifications. Paradise Gardens and Shamrock maintain that the location or positioning of the sprinkler head more than two years after their correct installation by Paradise Gardens does not raise a material issue of fact and is simply not relevant to the issue of said contractor’s immunity.
Additionally, Paradise Gardens and Shamrock argue that Ms. Lingoni’s accident happened after the warranty period in the contract expired and during a period of time that Paradise Gardens and Shamrock were no longer responsible for maintenance of the landscape and irrigation system. Paradise Gardens and Shamrock maintain that they did not have any custody or control of the allegedly defective sprinkler head. Paradise Gardens and Shamrock assert that they did not have any maintenance contract for the landscaping or sprinkler system for more than two years prior to plaintiffs accident because maintenance of the sprinkler system had been taken over by another landscaping contractor.
Paradise Gardens and Shamrock, relying on Rosato v. Louisiana Dept. of Transp. & Development, 1997-2543 (La.App. 4 Cir. 5/27/98), 714 So.2d 862, argue that once they provided factual support at the hearing on the motion for summary judgment sufficient to establish that the plans and specifications were followed, it was “... incumbent on plaintiff to show that there is a material issue of fact with respect to whether Paradise Gardens and Shamrock had reason to believe that working in accordance with [The Plans and Specifications] would create a hazardous condition.” Rosato at 867.
11sIn the alternative, Paradise Gardens and Shamrock argue that even if this Court agrees with Ms. Lingoni’s argument that Paradise Gardens and Shamrock were not entitled to the immunity of La. R.S. 9:2771, the grant of summary judgments in favor of Paradise Gardens and Shamrock were appropriate because, according to Louisiana jurisprudence, Paradise Gardens and Shamrock did not have custody or control of the landscaping and sprinkler system at the time of the accident (which incidentally occurred more than two years after Paradise Gardens and Shamrock had completed and installed said landscaping and sprinkler system).
Our review of the record in the instant matter establishes that Paradise Gardens and Shamrock presented credible evidence to the district court that was well-documented. Clearly, the district court was presented with countervailing affidavits in which the court found credible. Ms. Lingoni failed to produce factual support sufficient to establish that she would be able to satisfy her evidentiary burden at trial. As we stated earlier,
The party who bears the burden of persuasion at trial (usually the plaintiff) must come forth with evidence (affidavits or discovery responses) which demonstrates he or she will be able to meet the burden at trial. Once the motion for *380 summary judgment has been properly supported by the moving party, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion.
Cyprien, 2008-1067, p. 5, 5 So.3d at 866. Therefore we find that Ms. Lingoni’s countervailing expert’s affidavit did not create a genuine issue of fact for trial. We find that the district court did not err in this matter. There is no merit to the appellant’s argument.
114Ms. Lingoni also argues that the district court erred in granting summary judgment in favor of Daly-Sublette[2] and Sizeler architects because genuine issues of material fact exist regarding whether expert architectural testimony is required in this matter.
As to Daly-Sublette and Sizeler, Ms. Lingoni argues that Daly-Sublette and Sizeler based their motions for summary-judgment on their assertion that Ms. Lin-goni’s claim must fail because she did not have an expert in the field of architecture. Further, Daly-Sublette and Sizeler claimed that Ms. Lingoni could not maintain a negligence action against either Daly-Sublette or Sizeler regarding the work either they or other defendants performed at the Hibernia Bank location in question.
Ms. Lingoni argues that Daly-Sublette was responsible for the plans regarding the placement of the sprinkler in question, and expert testimony is not required to determine whether those plans were followed. Daly-Sublette contracted with Siz-eler to perform landscape-architectural duties at the Hibernia Bank location marking the accident site in this litigation. As discussed previously, Sizeler had contracted directly with Hibernia for the overall architectural/construction project, with its duties including providing schematics and design plans for the landscape-architectural elements at the Hibernia site, including the sprinkler systems on the site. These duties included providing landscape-architecture design schematics and submitting them to Hibernia for its approval. Sizeler’s corporate representative testified that Sizeler hired Daly-Sublette to produce the schematics and plans pertinent to the landscape | ^architectural elements at the site. Sizeler’s representative testified that Sizeler completely relied upon the expertise of Daly-Sublette in this area, and deferred to Daly-Sublette to ensure that plans were properly drawn up and followed.
However, Ms. Lingoni points out that Daly-Sublette’s own corporate representative testified that Daly-Sublette created the plans in question, including determining that the sprinkler head at issue needed to be at least 4 inches from the intersection of the two paved walkways that marked the accident site in question. She maintains that common sense would suggest that expert testimony would not be required to see if the end product did not correlate with the design documents approved by Hibernia.
Ms. Lingoni also argues that despite Sizeler and Daly-Sublette’s arguments in favor of summary judgment, Louisiana law routinely recognizes that expert testimony is not always required to establish the negligence of an architect, and the disputed genuine issues should have precluded the district court from granting summary judgment in favor of either Sizeler or Daly-Sublette on this issue. See Milton J. Womack, Inc. v. House of Representatives of State, 509 So.2d 62 (La.App. 1 Cir.,1987).
Additionally, Ms. Lingoni asserts that Sizeler’s and Daly-Sublette’s motions for *381 summary judgment ignored the fact that much of this matter turns not just on issues involving the standard of care for an architect and whether the defendant has deviated from that standard, but also on matters of basic contract interpretation. Ms. Lingoni notes that Sizeler entered into a contract with Hibernia Bank to oversee the architectural duties at the location in question, including the landscape-architectural elements. Ms. Lingoni notes that the contract includes provisions | ^establishing that Sizeler would accept responsibility for preparing schematic design documents for Hibernia’s approval.
Ms. Lingoni maintains that an explanation in the contract further establishes that Sizeler’s duties in this “Design Development Phase” extended to fixing and describing “architectural, civil engineering, and landscape architectural elements.” Further, she asserts that the Sizeler-Hi-bernia contract dictates that Sizeler would prepare construction documents, including drawings and specifications setting forth the requirements for the construction of the Hibernia project.
In support of her argument, Ms. Lingoni contends that in addressing the issue of the expert-testimony requirement in architect-liability cases, Louisiana courts have looked to the law applicable to medical-malpractice cases to inform their jurisprudence. She notes, in particular, that in Louisiana (in some medical malpractice cases), expert testimony is not required to establish a standard of care, particularly where a physician’s act is such that a lay person can infer negligence. See, Hastings v. Baton Rouge Gen. Hosp., 490 So.2d 275 (La.1986).[3]
Ms. Lingoni reiterates that Brian Sub-lette, the landscape architect designated by Daly-Sublette, testified in his corporate deposition that the specifications for the Hibernia location called for the sprinkler head in question to be at least four inches away from the paved surfaces. Mr. Sub-lette testified that having the sprinkler positioned away from the paved surface was for safety reasons, and to avoid a trip 117hazard that would be presented by having the sprinkler head too close to the paved area. Mr. Sublette explained that no standard or formal guidelines dictated this positioning; it was merely a determination made to avoid a safety risk. Sizeler’s corporate representative testified that Sizeler deferred to Daly-Sublette as “experts;” therefore, expert testimony from the defendants established that this positioning was necessary for maximum safety at the site in question.
Additionally, Ms. Lingoni argues that Mr. Sublette’s acknowledgment that this determination was not one based on professional standards or publications that dictated the positioning further underscores that this issue is not one requiring architectural expertise, but rather, an appreciation of common-sense safety concerns. She maintains that an architectural expert is not required to assist lay people with understanding that having trip hazards so near a walkway that a passerby’s foot might inadvertently strike or catch it is a safety risk. She contends that if lay individuals can determine whether the *382 structural integrity of a building has been properly accounted for in architectural design schematics, it stands to reason that lay individuals can appreciate basic safety and/or trip hazards without an architectural expert’s assistance. Ms. Lingoni asserts that this is particularly true in the instant case.
Ms. Lingoni concludes that despite arguments by Sizeler and Daly-Sublette to the contrary, Louisiana law routinely recognizes that expert testimony is not always required to establish the negligence of an architect.
Sizeler and Daly-Sublette argue that in order to prevail at trial against an architect (or design professional), it is essential that Ms. Lingoni establish these necessary elements: (1) the standards of skill and care owed; (2) that those standards were breached; and, (3) that “but for” the breach the injuries would not |1shave occurred. (Relying on McKeen Homeowners Ass’n, Inc. v. Oliver, 586 So.2d 679, 682; citing Segal Company, Inc. v. W.D. Glassell Co., 401 So.2d 483 (La.App. 2 Cir. 1981); and Pittman Construction Company v. City of New Orleans, 178 So.2d 312 (La.App. 4 Cir.1965), writ denied, 248 La. 434, 179 So.2d 274 (La.1965).)
Sizeler and Daly-Sublette argue Ms. Lingoni’s claim for architect negligence lack both the three essential elements, listed above, and factual support. Sizeler and Daly-Sublette assert that once they pointed out to the district court an absence of factual support for one or more of those elements, there was no genuine issue of material fact, and summary judgment was warranted.
Sizeler and Daly-Sublette also argue that Ms. Lingoni instead relied on unsupported allegations and failed to demonstrate a genuine issue of material fact warranting the preclusion of summary judgment. Particularly, Sizeler and Daly-Sublette maintain that Ms. Lingoni failed to produce competent evidence of the duty owed by Sizeler and Daly-Sublette or that Sizeler and Daly-Sublette breached that duty, or that the allegedly duty was the “cause-in-fact” of her accident.[4] They argue that in order for her to prevail on her claim for architect negligence, Ms. Lingoni was required to present evidence of the duty owed and that the architect breached that duty. They contend that since Ms. Lingoni failed to present such evidence, the district court was correct in granting summary judgment.
In addition, Sizeler and Daly-Sublette argue that Ms. Lingoni’s failure to present expert testimony to establish the standard of care and skill owed by Sizeler | U)or that Sizeler deviated from the standard of care was also detrimental to her claim. In support of their argument Sizeler and Daly-Sublette assert that this Court has held, generally, that expert testimony is necessary “to establish the standards of care and skill against which an architect’s performance is judged ...”[5] Sizeler and Daly-Sublette also assert that in Greenhouse v. C.F. Kenner Associates Limited Partnership, 1998-0496, p. 7 (La.App. 4 *383 Cir. 11/10/98), 723 So.2d 1004, 1008 this Court further explained that “the failure to submit expert testimony to prove the standard of care is a ‘fatal omission.’ ”
Sizeler and Daly-Sublette note that the only exception that might apply to this rule is when a lay person can infer design negligence applying a common sense standard. As demonstrated by all parties at the summary judgment hearing, the design of the sprinkler system required the sprinkler heads to be installed four inches from the edge of the sidewalk. There was no evidence that the 4 inch requirement was defective or insufficient or otherwise deviated from any standard of care and skill owed. The only expert provided by Ms. Lingoni on this issue was her liability expert, Wilfred Gallardo, who testified that there were no standards or codes concerning the location of sprinkler heads. Unfortunately, Sizeler and Daly-Sublette maintain that common sense cannot be relied on by Ms. Lingoni to establish whether a design that requires sprinkle heads to be installed 4 inches from the sidewalk is per se defective.
As explained by Daly-Sublette’s representative, the design of the sprinkler system met all applicable standards of care and skill owed. Sizeler and Daly-jSublette20 note that as to this issue, Ms. Lingoni only argued that the sprinkler head should have been “substantially further away from the sidewalk intersection.” However, no evidence was presented by Plaintiff indicating that there was any design standard that should have been followed.
Further, on this issue, there is no dispute that the sprinkler head Ms. Lingoni allegedly tripped over was less than 4 inches from the sidewalk at the time of the accident. Because the sprinkler head was less than 4" from the sidewalk at the time of the accident, a layperson cannot infer, applying a common sense standard, that the design was faulty.
Next, Sizeler and Daily-Sublette argue that Ms. Lingoni’s own liability expert established that the cause-in-fact of her accident was something other than the location of the sprinkler head. Ms. Lingoni’s only liability expert, Mr. Gallardo, was deposed on February 18, 2004 (prior to Sizeler and Daly-Sublette’s involvement in this litigation). Mr. Gallardo testified that his area of expertise is “safety” and that he was retained in this case to be a “safety expert” and to perform an “accident cause” analysis. Sizeler and Daly-Sublette point out that Mr. Gallardo is not an architect, and that he offered no testimony on the standard of care owed by Sizeler and Daly-Sublette or that Sizeler and Daly-Sublette deviated from that standard.
Based on his observations, Mr. Gallardo testified that the only trip hazard in the area where the accident allegedly occurred was a sprinkler head. Based on his experience and information provided by Ms. Lingoni, Mr. Gallardo opined that the sprinkler head had to be in the up, or on position, or “popped up,” at the time of Ms. Lingoni’s alleged accident. On this issue, Mr. Gallardo testified:
|21Q. So it is your opinion, then, that this sprinkler system was up in some fashion and [plaintiff] tripped over it?
A. That would be my opinion, for the simple reason that it had to be something to catch her ... so something has [sic] to be protruding up for her to trip on.
Sizeler and Daly-Sublette point out that Mr. Gallardo went on to state that “but for” the fact that the sprinkler head apparently malfunctioned and was in the up position, Ms. Lingoni would not have tripped. Mr. Gallardo testified that but for the malfunction, “there’s no way [plaintiff] would have tripped.” Particularly, *384 Mr. Gallardo opined that had the sprinkler head been flush or level to the ground, as it had been on the day he inspected the property, that there was “no way” Ms. Lingoni would have tripped.
Because of this lack of evidence, Sizeler and Daly-Sublette assert that they cannot be responsible for any malfunction' of the system. Although Mr. Gallardo opined that the sprinkler head was located too close to the sidewalk, he did not make any comparison of the drawings or any of the contract documents to determine why the sprinkler head was located in the place it was at the time he conducted his inspection. On the issue of whether the design was sufficient, the only thing Mr. Gallardo offered was that there are “no building codes as to sprinkler heads.” He offered no testimony relating to the design, that he had ever reviewed the design or specifications, what Sizeler’s and Daly-Sublette’s obligations were, or should have been, or that Sizeler breached those obligations in any particular manner.
Our review of the record indicates that the sprinkler head was designed to be 4" off-center from the sidewalk and that several persons, including Sizeler, Daly-jSub-lette,22 Paradise Gardens and Shamrock Construction, inspected the locations of the sprinkler heads at the conclusions of the project and determined that all of them were located where they should have been. Ms. Lingoni presented no evidence to demonstrate that a genuine issue of material fact remained.
Our review of the record also indicates that while Ms. Lingoni claims that she tripped on a “popped up” sprinkler head, her safety expert, Mr. Gallardo, testified that more likely than not the sprinkler head malfunctioned at the time of the accident causing a trip hazard. There is nothing in the record to indicate design negligence or the work undertaken by Sizeler or Daly-Sublette caused Ms. Lingoni’s accident, nor was there evidence produced by Ms. Lingoni establishing the duty owed by Sizeler and Daly-Sublette, or that Sizeler and Daly-Sublette breached that duty. The failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion. Cyprien v. Board, of Sup’rs ex rel. University of Louisiana System, 2008-1067, p. 5 (La.1/21/09), 5 So.3d 862, 866, 243 Ed. Law Rep. 991. Because genuine issues of material fact do not exist, we find that the district court properly granted the motions for Summary Judgment filed by Sizeler and Daly-Sublette.

DECREE

The judgment of the district court is affirmed.
AFFIRMED.
BELSOME, J., concurs in part and dissents in part with reasons.

. Ms. Lingoni notes, "See., e.g., Calcasieu Parish Sch. Bd. v. Lewing Const. Co., Inc., 931 So.2d 492 (La.App. 3 Cir.2006).”

. Daly-Sublette adopted the arguments raised in Sizeler’s brief.

. In Hastings, the surviving parents brought a medical malpractice action against the hospital, emergency room physician, and thoracic surgeon on call for the wrongful death of a stab-wound victim, who died following an attempt to transfer him to another hospital. The district court, entered a directed verdict for hospital, physician, and surgeon, and the parents appealed. The Court of Appeal, 486 So.2d 190, affirmed. Following grant of writ of certiorari to consider that judgment, 490 So.2d 275, the Supreme Court, held that evidence presented jury questions as to whether physician and surgeon, and hospital through such physicians, were negligent in their treatment of victim.

. Sizeler and Daly-Sublette make reference to Standard Roofing Co. of New Orleans v. Elliott Constr. Co., Inc., 535 So.2d 870 (La.App. 1 Cir.1988), which determined that an architect is not responsible for damages caused by inherent manufacturing defects unless it is established that the architect modified the product.

. Sizeler notes: See Sams v. Kendall, 499 So.2d 370 (La.App. 4 Cir.1986), citing Pittman Const. Co. v. City of New Orleans, 178 So.2d 312. See also Carter v. Deitz, 556 So.2d 842 (La.App. 4 Cir.1990) "... it is necessary to produce expert witnesses to establish the standards of care and skill against which [a design professional’s] performance is to be judged.”